**SAULS v. MARTIN.**

C. A. 305.

District Court, W. D. South Carolina, Anderson Division.

July 8, 1942.

Culbertson & Brown, of Greenville, S. C., for plaintiff.

Watkins & Prince, of Anderson, S. C., for defendant.

WYCHE, District Judge.

In this case plaintiff sues under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq., to recover $771.50, together with an equal additional amount as liquidated damages, and for $500 attorney's fees, for alleged unpaid overtime wages accruing, according to the allegations, from the week ending January 4, 1941, to August 30, 1941, while the plaintiff was employed by the defendant in the production of goods for commerce during said period. Defendant alleges that the plaintiff was employed in a bona fide administrative executive capacity and that he was exempt from the overtime provisions of the act. The answer further denies the remaining allegations of the complaint and thereby puts in issue plaintiff's claim as to the amount of overtime worked and the amount due therefor.

The facts are substantially as follows: The defendant, a resident of Easley, South Carolina, who was engaged in a cotton goods business, twelve miles away, in Greenville, South Carolina, was entirely inexperienced in manufacturing. In the year 1939 he decided to establish a new industry at Easley for the manufacture of tapes and other narrow cotton fabrics. In August, 1939, he employed the plaintiff, who was an experienced narrow fabric manufacturer, as superintendent of the new plant, at a salary of $35 per week, at which rate his salary continued until plaintiff was discharged on August 30, 1941. Plaintiff was vested with wide discretion and his recommendations were followed in the design of the building, selection and purchase of ma-

chinery and equipment and in the quality and source of the materials used. He hired all of the operatives in and about the plant, except one negro janitor. He fixed the hours of work for the different shifts employed, laid out and directed the manufacturing operations, of which he had complete and sole charge.

The output of the mill was sold by Hudson Cotton Goods Company of Greenville, as selling agent. Mr. Cheney, Vice-President of this concern, had charge of the sales of this mill. It appears from the testimony, as well as from various exhibits exhibited and introduced in evidence, that all orders for goods were referred to the plaintiff for his recommendation as to whether the mill could produce the particular goods desired, and if so, at what cost and when deliveries could be made. The plaintiff figured the cost of manufacture of different constructions and his recommendations and decisions as to the desirability of accepting orders were relied upon and adopted. Mr. Martin, the owner of the mill, seems not to have even been consulted with reference to these matters. These facts show the large discretion and authority vested in plaintiff.

The defendant visited the mill for an hour or so in the mornings on his way to work in Greenville, and again in the afternoons on his return from Greenville, spending more time in the mill in the afternoons. While he was at the plant he exercised no control or authority over his operatives. His time was devoted to observing the manufacturing processes, in an effort to learn something about them. His activities were confined to the installation of some additional appliances and equipment, and the testimony is that he secured the permission of the superintendent to use any of the employees in assisting the defendant in these installations. There is no testimony that the defendant exercised any control or direction over the operatives of the plant. The defendant had charge of the finances of the mill and of the buying of the raw materials used and the greater part of the supplies. This appears to have been done from the Greenville office. There is no testimony that any office work was done at the mill and that there was any real office in the mill. The fact that the financing of the mill's operations and its buying and selling were performed by others than the plaintiff is entirely consistent with the plaintiff, as superintendent, being deemed to be in sole charge of the manufacturing plant he was employed to manage. Such functions of many business enterprises are performed by agents other than the man in sole charge of a manufacturing plant.

This was a small plant, with only seven looms. It did not spin the yarn from which its tape was manufactured. He bought the yarn already manufactured. The yarn was processed and woven in the mill. This, with the packing and shipping, comprised the operations at the mill. The number of employees varied from ten to eighteen or twenty. The preponderance of the testimony is that the plaintiff did all the hiring. There is testimony from his witnesses that the defendant was consulted by the plaintiff with reference to the employment of some of the operatives; but even as to these, the plaintiff's recommendations were given great weight, even if he did confer with the defendant about them. It appears that no one was fired by either the plaintiff or the defendant until plaintiff was fired.

Plaintiff was employed as superintendent at a weekly salary of $35, to run the mill. He was not employed by the hour. From time to time, as the exigencies of the business required, he performed certain work not ordinarily within the range of the superintendent's duties, certainly not in a large plant. J. E. Medlin was employed to fix the looms when occasional break-downs occurred. He was also employed to operate two looms on one shift. When called to fix looms, he either shut down his two, or called another to operate them. When looms needed fixing outside the hours of his shift, either he or the plaintiff was called, and the plaintiff did some of this work, particularly at night. Plaintiff also assisted the employees to pack and ship the goods at various times. He admitted that he was not employed or required to do this work, and that Martin never ordered or directed him to do it. He did this voluntarily because, as he says, it was at times necessary for him to do it and because those employed for that purpose could not attend to it when plaintiff deemed such attention necessary. This is customary in small establishments, such as this was. No reason appears why plaintiff could not have employed additional persons for that purpose, if he had deemed it advisable.

Plaintiff's proof of the number of hours per day or per week that he gave to this work and the number of hours that he

worked in excess of forty per week is not convincing. He kept the record of the number of hours each of the other employees worked each day, including overtime hours, but he never recorded on the mill time-book any hours of overtime for himself. The record he offers now is only a copy of the mill payroll book, in which in red pencil at the margin and in a different pencil from that used in the rest of the book he sets down the figure of alleged overtime hours. He never presented these figures to the defendant during all the time he was employed. He made no claim for overtime pay during that period, nor at the time he was discharged, at which time he and the defendant agreed on the payment of his salary for five (5) weeks after his discharge as a satisfactory adjustment in lieu of notice. He made no claim for overtime pay for more than two and a half months after he was discharged, and then through his attorneys only. He has never made a claim through the Wage and Hour Administration, and this administration has never passed on his claim.

■ Plaintiff's employment was in the production of goods for interstate commerce, and the Fair Labor Standards Act is applicable. Section 7(a) provides for the payment for overtime at the rate of one and a half times the regular rate for hours of work in excess of forty per week for the period involved in this case. Section 13(a) declares that the provisions of Section 7 "shall not apply with respect to (1) any employee employed in a bona fide executive * * * capacity * * * as such terms are defined and delimited by regulations of the Administrator." The definition of the Administrator, effective during the period involved in this case, is as follows: "The term 'employee employed in a bona fide executive * * * capacity' in section 13(a)(1) of the act shall mean any employee (A) whose primary duty consists of the management of the establishment in which he is employed or of a customarily recognized department or subdivision thereof, and (B) who customarily and regularly directs the work of other employees therein, and (C) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight, and (D) who

customarily and regularly exercises discretionary powers, and (E) who is compensated for his services on a salary basis at not less than $30 per week (exclusive of board, lodging, or other facilities), and (F) whose hours of work of the same nature as that performed by nonexempt employees do not exceed 20 per cent. of the number of hours worked in the work-week by the nonexempt employees under his direction; provided that this subsection (F) shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment."

■ The employment of the plaintiff meets every requirement of this definition. In my opinion it is clear from the facts in this case, from the provisions of the act itself, and from the definition of the Administrator that plaintiff was employed in a bona fide executive and administrative capacity by the defendant, and, therefore, the provisions of sections 6 and 7 of the Act relating to minimum wages and maximum hours are inapplicable as to him. Since, as the court finds, he was in sole charge of an independent establishment and, therefore, within the terms of the proviso of Section (F), it is immaterial how many hours were given in the performance of work ordinarily done by nonexempt employees. He is exempt from the overtime provisions of Section 7(a) of the Act and cannot prevail in this action. Cf. Wilkinson v. Noland Co., D.C., 40 F.Supp. 1009.

■ It, therefore, becomes unnecessary for the court to pass upon the question as to whether he has made satisfactory proof of his claim for overtime hours, and his claim that the hours he devoted to the work of the same nature as that performed by nonexempt employees exceeded twenty per cent. of the number of hours worked in the work-week by nonexempt employees. As the courts have held, he did not, as a matter of law, by failing to report and collect for overtime hours, waive his right to overtime pay, if entitled thereto; but the court can and should consider the circumstances of his failure to report and make claim for this compensation when he should have done so, as above stated, in determining the weight of his testimony on this issue.

Judgment will be for the defendant.