## JOSEPH v. RAY.

### No. 2723.

Circuit Court of Appeals, Tenth Circuit.

Dec. 24, 1943.

Floyd L. Rheam, of Tulsa, Okl. (Valjean Biddison, of Tulsa, Okl., on the brief), for appellant.

W. L. Shirey, of Tulsa, Okl., for appellee.

Morton Liftin, of Washington, D. C. (Douglas B. Maggs, Sol., and Bessie Margolin, Asst. Sol., both of Washington, D. C., Llewellyn B. Duke, Regional Atty., of Dallas, Tex., and H. Michele Olsson, Atty., of Washington, D. C., United States Department of Labor, on the brief), amicus curiae.

Before PHILLIPS, HUXMAN, and MURRAH, Circuit Judges.

MURRAH, Circuit Judge.

Elmer Ray brought this suit against his employer, Jim Joseph, to recover overtime compensation, liquidated damages, and attorney's fee, as provided by Sections 6, 7, and 16(b) of the Fair Labor Standards Act of 1938, 52 Stat. 1060–1069, 29 U.S.C.A. 201–219. The employer denied liability under the Act, contending that the employee was employed in a "bona fide executive * * * capacity" within the meaning of Sections 13 (a) (1), and was therefore exempt from the coverage of the Act. Alternatively, the employer contended that the employee did not work in excess of the statutory workweek, during the period of his employment, and consequently was not entitled to overtime compensation, liquidated damages and attorney's fee granted by Section 16(b) of

the Act. The trial court denied the asserted exemption, holding that the employee was "engaged in commerce or in the production of goods for commerce"; that he was not a "bona fide executive" and had worked in excess of the statutory workweek, as defined by Section 7, for which he was entitled to overtime compensation, liquidated damages and attorney's fee. Judgment was entered for the total sum of $1,918.04, and the employer has appealed.

The facts, as found by the court, and fairly supported by the evidence, controlling the question of coverage, are substantially these: Sometime in 1937, the appellant, who owned and operated a grocery store in Bristow, Oklahoma, became interested in a "stripper" oil lease, known as the Liston lease, and in 1940 acquired an interest in an adjoining lease, known as the Porter lease. Being inexperienced in the operation of this type of lease he employed appellee as a pumper to operate the two leases, with instructions to "take care of the lease as if it were his own". Accordingly, the appellee undertook the management and operation of the leases; did all the work and labor necessary and incidental to pumping the wells and marketing the oil produced therefrom, including laying pipe lines, building power houses, engine blocks, constructing tanks, pulling tubing and general repair and upkeep. He was the only permanent employee on the lease, but whenever it became necessary he was authorized to, and did, employ others to assist him in the performance of the work and labor incidental to the operation of the leases. He supervised and directed the work of the extra employees, but worked side by side with them, doing the same type of labor. During the period of his employment approximately 40 different men were employed for various short periods of time, and were paid the regular scale of wages by the employee from his own funds, for which he was reimbursed by his employer monthly. He was authorized to purchase equipment and supplies for necessary replacements and repairs, which he either charged to his employer or paid out of his personal funds, for which he was reimbursed. When first employed, he received a salary of $80 per month; when the Fair Labor Standards Act became effective he was receiving $100 per month, and his salary was later raised to $125 per month, but he never received as much as $30 per week. The oil produced from the leases was transported by pipe line to the Mid-Continent Petroleum Corporation's refinery at Tulsa, Oklahoma.

■ The Fair Labor Standards Act was designed to include within its scope and coverage, every employee "engaged in commerce or in the production of goods for commerce", except those specifically exempted therefrom; and, the Act is remedial and should be given a liberal construction to accord with the legislative purpose. Helena Glendale Ferry Co. v. Walling, 8 Cir., 132 F.2d 616; Bowie v. Gonzalez, 1 Cir., 117 F.2d 11; Fleming v. Hawkeye Pearl Button Co., 8 Cir., 113 F.2d 52; Abram v. San Joaquin Cotton Oil Co., 49 F.Supp. 393. Coverage under the Act is not, however, presumed by the mere fact of employment; it is incumbent upon the one asserting rights thereunder to show that the employee is "engaged in commerce or in the production of goods for commerce", Rucker v. First National Bank of Miami, Oklahoma, 138 F.2d 699; Stoike v. First National Bank, 290 N.Y. 195, 48 N.E.2d 482, certiorari denied 64 S.Ct. 50, 88 L.Ed. ——; Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 63 S.Ct. 125, 87 L.Ed. 83. But having thus established the character of the employment the provisions of the Act are applicable, unless it is shown that the employment clearly falls within one of the exemptions carved from the general rule of coverage. Helena Glendale Ferry Co. v. Walling, supra; Bowie v. Gonzalez, supra; Fleming v. Hawkeye Pearl Button Co., supra; Abram v. San Joaquin Cotton Oil Co., supra. That the employee was "engaged in commerce or in the production of goods for commerce" is not challenged on appeal. We have here only the narow question whether the employee was a "bona fide executive" within the meaning of Section 13(a) (1), and therefore exempt from the coverage of the Act.

Section 13 of the Act provides in part: "(a) The provisions of sections 6 and 7 shall not apply with respect to (1) any employee employed in a bona fide executive, * * * capacity * * * (as such terms are defined and delimited by regulations of the Administrator)". 52 Stat. 1067, 29 U.S.C.A. § 213(a). In pursuance of the authority granted, the Administrator, as of October 24, 1940,[1] defined and delimited that

---

[1] Prior to October 24, 1940, the Administrator included the term "bona fide executive [and] administrative * * capacity" in the same definition, as follows:

term as any employee "(a) whose primary duty consists of the management of the establishment, in which he is employed or of a customarily recognized department or sub-division thereof, and (b) who customarily and regularly directs the work of other employees therein, and (c) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight, and (d) who customarily and regularly exercises discretionary powers, and (e) who is compensated for his services on a salary basis at not less than $30 per week (exclusive of board, lodgings or other facilities), and (f) whose hours of work of the same nature as that performed by nonexempt employees do not exceed 20 per cent of the number of hours worked in the work-week by the nonexempt employees under his direction. Provided that this paragraph shall not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment". Title 29 Code of Federal Regulations, 1940 Supplement, Chap. 5, Section 541.1.

Appellant finds no fault with the reasonableness of the Administrator's definition, except the $30 salary requirement found in (e). Rather, it is argued that the employment meets the letter and spirit of all components of the definition, except the employee did not receive a minimum of $30 per week. In that regard it is urged that this constituent of the definition is an arbitrary standard, wholly unjustified by the definitive powers delegated to the Administrator. But, in the view we take of the attendant facts, we are not under the necessity of deciding the question whether the salary requirements provided in the regulations are arbitrary and unauthorized, since quite apart from the wage requirement, it is clear to us that the employee cannot be considered as a "bona fide executive", within the meaning of the other definitive parts of the definition.

■ The trial court held that the primary duty of the employee was that of a pumper of oil wells, not the manager of a lease, or the supervisor of the work of others employed thereon. We think this conclusion is justified by the facts and circumstances before the court. It is true, in a literal sense, that the employee was manager of the leases, he took care of them "as if they were his own". It is also true that he hired and fired, and directed the work of other employees, when there were any. However, in a broad and practical sense the employee was predominately a pumper of oil wells on an oil lease where he was the only permanent employee, and where the major portion of his duties was devoted to actual manual labor. Cf. Abram v. San Joaquin Cotton Oil Co., supra; Sauls v. Martin, D.C., 45 F.Supp. 801, 802; Rosenthal v. Atkinson, D.C., 43 F.Supp. 96; Owin v. Liquid Carbonic Corporation, D.C., 42 F. Supp. 774, 776. Without more, it is plain that the employee was not employed in a "bona fide executive * * * capacity" within the meaning of Section 13(a) (1) of the Act.

■ The question remains whether the judgment of the trial court on the issue of hours worked, for the purpose of computing overtime compensation and liquidated damages, is clearly erroneous because not supported by any competent evidence. It is, of course, incumbent upon the employee to show by a fair preponderance of the evidence, not only that he worked in excess of the statutory work-week but the number of hours worked in excess thereof. In other words, the judgment must be based upon facts, not speculation and conjecture. Jax Beer Co. v. Redfern, 5 Cir., 124 F.2d 172, 175; Woods v. Wilkerson, D.C., 40 F.Supp. 131, 133; Devoe v. Atlanta Paper

---

"The term 'employee employed in a bona fide executive [and] administrative * * capacity' in section 13 (a) (1) of the Act shall mean any employee whose primary duty is the management of the establishment, or a customarily recognized department thereof, in which he is employed, and who customarily and regularly directs the work of other employees therein, and who has the authority to hire and fire other employees or whose suggestions and recommendations as to the hiring and firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight, and who customarily and regularly exercises discretionary powers, and who does no substantial amount of work of the same nature as that performed by non-exempt employees of the employer, and who is compensated for his services at not less than $30 (exclusive of board, lodging, or other facilities) for a workweek". Title 29 Code of Federal Regulations, 1938 Supplement, Chap. 5, Section 541.1.

412

Co., supra; Wilkinson v. Noland Co., D.C., 40 F.Supp. 1009, 1013; Lowrimoore v. Union Bag & Paper Co., D.C., 30 F.Supp. 647. The employer says that the employee did not meet that degree of proof.

Although the employee submitted no written work records, reflecting the number of hours worked, he testified that he actually worked fourteen to sixteen hours daily, but claimed only twelve, because as he stated, he wanted "to be fair". His conclusions were based upon his statements that he commenced work at seven o'clock in the morning and usually worked until around seven o'clock in the evening, and frequently it was necessary to return to the lease for additional hours of labor in the evening. The employee was not required to keep any record of the hours worked, but the employer testified that the employee was instructed not to work in excess of forty hours per week, and it was shown that the employee's successor worked only eight hours per day while performing the same duties.

From this and other competent evidence the trial court found that the employee worked ten hours per day, or a total of seventy hours per week, during the period of his employment, and gave judgment accordingly. From the whole record we are unable to say that the findings of the trial court were clearly erroneous, and the judgment is affirmed.