## TOPPIN v. 12 EAST 22ND STREET CORPORATION et al.

District Court, S. D. New York.

Jan. 12, 1944.

Victor J. Herwitz, of New York City, for plaintiff.

M. S. & I. S. Isaacs, of New York City, for defendant 12 East 22nd Street Corporation.

David Oppenheim, of New York City, for defendant Rau.

CAFFEY, District Judge.

On December 3 I disposed of all the issues in this action except overtime and its incidents. Overtime will now be taken up.

The trial continued from November 22 to Saturday, December 4. I went into the motion part on Monday, December 6. On December 9 (while in the motion part) I heard counsel further. Since then, I have been continuously engaged for about four weeks on work of or growing out of the motion part.

I am to go into a criminal part on December 12. Unless by then I finish or substantially finish this memorandum, long further delay in passing on the overtime question will be unavoidable. That would be unfortunate. Moreover, I should like to prepare and file the findings of fact and conclusions of law as soon as possible.

In order promptly to complete my task it will be essential that I refrain from elab-

orate discussion. Moreover, due to the extensive interchanges between court and counsel while the trial was in progress, particularly during oral argument, I feel that, with little further explanation, the participants will understand the grounds on which I base my decision.

### I.

Toppin brought this action on behalf of himself and other employees of the defendants similarly situated as himself. Two other employees (Brown and Bailey) joined Toppin. It will be convenient to speak of the three persons named as if all were formal plaintiffs.

The evidence as to overtime differs somewhat as to each plaintiff. I think it better, therefore, to treat them separately.

There are two defendants. One is a corporation and was the owner of the building involved. The other is its president, Rau. On December 6 I passed on numerous matters. These included a question as to Rau's responsibility. There is no occasion again to speak of him individually in this memorandum separately from the corporate defendant. So far as relates to overtime, what applies to the corporate defendant applies also to Rau. Hence, unless otherwise stated, it will be convenient to refer, and I shall refer, to both as the defendants.

### II.

I think initially two general observations should be made.

In the first place, the plaintiffs have submitted five schedules of their alleged overtime. The variations between these are numerous. An idea of how extensive they are will be gained, for example, by comparing the schedules attached to the complaint with the last set (which are included in Exhibit 34 for identification). The volume of differences suggests uncertainty on the part of the plaintiffs as to what actually are their claims.

In the second place, much of the testimony drawn out from Brown and Bailey, who took the stand, was in response to leading questions. Nevertheless, despite warnings by the court, use of these was persisted in. I feel that, in consequence, the testimony adduced was greatly weakened and is not entitled to the normal weight it would or might have had if given under questioning which was not suggestive of the answer. Cf. The Barbed Wire Patent (Washburn & Moen Mfg. Co. v. Beat 'Em All Barbed-Wire Co.), 143 U.S. 275, 284, 12 S.Ct. 443, 36 L.Ed. 154.

### III.

Toppin is away in the Army. He did not appear at the trial nor was his deposition taken. We are, therefore, without any testimony from him. Substantially all we have with respect to overtime by him comes from Bailey.

In substance Bailey said (or at least implied) that he saw Toppin working in the building every day he (Bailey) worked there. At least this is what I understand counsel for the plaintiffs to contend and, inasmuch as it favors Toppin, for the moment I shall assume that this is what Bailey testified.

The claim of Toppin for overtime runs from the week ending October 29, 1938, to the week ending October 3, 1942 (Schedule A, 5th revision, Exhibit 34 for identification and, unless otherwise indicated, hereafter the claim schedules referred to will be those embraced in that exhibit). In other words, the period covered is nearly four years; and of the period the beginning date was more than five years and the ending date more than one year preceding the trial. There is no writing which corroborates Bailey's statement about Toppin. Yet where plaintiffs as witnesses for themselves were telling a story of work they claimed to have performed, it was rejected as unbelievable by Judge Lovett in Epps v. Weathers, D.C. S.D. Ga., 49 F.Supp. 2. At page 5 of 49 F.Supp. beginning with the last paragraph of the first column, he wrote as follows:

"The burden is on the plaintiffs to establish by a preponderance of the evidence the number of hours worked and the amount of wages due; and the evidence to sustain this burden must be definite and certain. * * * in this the plaintiffs have failed. Not only is their evidence as to the hours they worked unconvincing, but I think it would be impossible for them to remember how long or how often they worked in the absence of some record made contemporaneously."

I agree with Judge Lovett and I think other rulings to which my attention has been directed (Jax Beer Co. v. Redfern, 5 Cir., 124 F.2d 172, at page 175, next to last paragraph in the right hand column, and Ralston v. Karp Metal Products Co., Inc., 179 Misc. 282, 284, 38 N.Y.S.2d 764)

support the same view. See also Lowrimore v. Union Bag & Paper Corporation, D.C. S.D. Ga., 30 F.Supp. 647, 649, fourth paragraph in right hand column, affd. in Gale v. Union Bag & Paper Corporation, 5 Cir., 116 F.2d 27.

I feel that if there were no other reason, what was held in the four cases cited, standing alone, would be adequate for an entire rejection of the Toppin claim.

The payrolls of the defendants, portions of which were introduced by and are signed by the plaintiffs (Exhibit 13), show that in 1939 to 1942 the defendants made some payments to each plaintiff for overtime and that receipts (containing recitals of the overtime) were signed by the employees concerned. Yet there is nothing in the payrolls or elsewhere in any writing to corroborate, nor is there any other witness who orally really corroborates, the statement of Bailey above relating to overtime.

■ Moreover, apart from the receipt cards and one request to the defendants by Brown in 1941 (which was complied with), prior to the commencement of the present action (on December 11, 1942) there does not appear ever to have been any mention by any plaintiff of overtime nor any claim for unpaid-for overtime. Such delay is so indicative of the claim in suit being unfounded that, in order to establish the contrary, clear and convincing proof is demanded. Brown v. Carter Drilling Co., D.C. S.D. Tex., 38 F.Supp. 489, 492, last sentence of third paragraph in right hand column; Wilkinson v. Noland Co., D.C. E.D. Va., 40 F.Supp. 1009, 1013, first full paragraph of right hand column; and Sauls v. Martin, D.C. W.D. S.C., 45 F.Supp. 801, 803, bottom of second column. The evidence adduced is certainly far below measuring up to that quality.

In considering the claim of Toppin, up to this point I have assumed that Bailey squarely testified in support of it. The case, however, is not that strong for Toppin.

Among other things Bailey said this: He and Toppin had the same work schedule. There were early and late shifts. When Toppin worked on the early shift he (Bailey) worked on the late shift and vice versa. The shifts began at different hours. On alternate Saturdays only one of the plaintiffs named worked and the other remained away from the building. Again, Bailey continued, Toppin was not at the building every day. On two or three days Toppin was sick and on three or four days was out. Exclusive of those (none of which was identified), says Bailey, Toppin worked every working day.

I think these explanatory statements greatly weaken the testimony of Bailey. For instance, if he and Toppin arrived or left the building at different times and on Saturdays one uniformly was absent, it is impossible for Bailey of his own knowledge to know how many hours Toppin worked or whether in fact Toppin performed the work schedule prescribed for himself and Bailey.

Paisner, one of the tenants, said that Toppin and Bailey alternated on the late shift, as well as alternated at night in the passenger elevator service. He said further that he does not remember Toppin being away from the building,—though possibly he or Bailey was sick and at times was away during the period from October, 1938, to January, 1941.

The testimony just recited seems to me entirely too general and incomplete to strengthen the case for Toppin's claim.

In addition, on account of some trifling incident concerning a threat to bring a suit against the witness, when on the stand Paisner displayed bias against the defendants. If it were worth while, this would be taken into account in measuring the value of his testimony.

■ After reviewing the record, I am persuaded that the claim of Toppin has not been established and should be rejected in its entirety. I think the matter comes squarely within the precedent laid down by Judge Conger in Interstate Magazine Hauling Corp., D.C., 55 F.Supp. 880. At page 883 of his opinion in 55 F.Supp. 880, he said that "the amount of overtime work claimed herein * * * [was] so speculative and uncertain from the evidence that a proper basis for determination of such overtime could not be determined with any degree of certainty."

IV.

I think that, upon the grounds assigned above in regard to the Toppin claim, on the record the holding as to the Brown and Bailey claims should be the same. Nevertheless, I wish to make a few additional comments.

## V.

Brown was a freight elevator operator. He claims that he also lit fires for producing heat in the building, as well as did cleaning work inside and adjacent to the building, and did repair work on the 12 floors of the building where there were tenants.

In Schedule B Brown states that the items of his claim ran from the week ending December 10, 1938, to the week ending September 26, 1942. It follows that he was guilty of delay similar to, and varying little in length from, that of Toppin in joining in this action to recover for overtime.

Moreover, Brown rested exclusively upon his own recollection, without any written corroboration, when recounting his alleged overtime work. With respect to his claim there was the same likelihood of forgetfulness as there was on the part of Bailey and, as I read the authorities heretofore cited, they require rejection of the Brown claim.

Furthermore, on the fact side, the situation in regard to recollection seems to me worse for Brown than for Bailey.

When on the stand Brown waited frequently (and so frequently when critical stages were reached that perhaps it would be justifiable to say waited nearly always) an extraordinarily and unexplained long time before replying to questions. Yet, on the whole, his answers, taken at their face, were rather complete. He went so far even as to say, for example, that he was never late in arriving at his work. True he changed or corrected some of the answers. Yet I am unable to rid myself of the impression that, in this respect, he benefited by the way in which he was questioned.

It has been suggested that Brown had little schooling (having gone only to the fourth grade); also that possibly he was stupid. If either fact was, or if both facts combined were, the explanation of the way in which he testified, I feel that it would not help him so far as concerns this lawsuit. I have had experience at trials with unlettered persons whose memories were unusually clear. Moreover, however much we may sympathize with one who is uneducated, a court is not free to apply to him a different rule of law than that which governs others.

Brown fell into errors which on further examination he conceded. It is not remarkable that he made some mistakes. Yet, as I conceive, this also does not help him. I say this because he made so many statements about dates (and in a case like the one at bar dates are obviously crucial) that, without using a contemporary memorandum, I do not believe any one less than a marvel (and Brown was not a marvel) could remember.

A good deal of examination and cross-examination of Brown centered around weeks for which payrolls signed by him were produced. Yet he gave testimony covering details not embraced in the payrolls nor (on its face) revealed in his claim schedule. In connection with these dates, and in regard to numerous things not included in payrolls for the corresponding dates, he made statements shown to be wrong or which could not be verified or were conflicting. Such, for example, were particular days when he worked or did not work, when he was sick, when he was on vacation and the like. Furthermore, though we be unable specifically to demonstrate error, I feel certain that, after the elapse of so much time, nobody could remember with accuracy, nor could anybody recall at all, what were the facts without using some writing made at or about the date of the event.

I have checked over instances of the kind mentioned for twelve designated weeks in 1941 and 1942. This checking strengthens the impression I have just stated.

I am convinced, therefore, that Brown has not established his claim by the measure of proof required by law. Accordingly, I feel that I must disallow it.

## VI.

Bailey claims overtime from the week ending October 29, 1938, to the week ending October 3, 1942 (Schedule C). For the purpose of estimating the strain on the memory the period of his employment is not materially different from that of Brown.

Bailey says he had four different weekly work schedules; but he is unable to state, or has not stated, on which schedule he worked in any particular week.

As to beginning work, while he stated the hours generally, it is plain that he was merely undertaking to give the hours he

usually arrived or his instructions required him to arrive at the building. Indeed, he said explicitly that he would come in late some mornings.

Bailey testified further that he could not remember the dates of his absences or how long these lasted. He stated that he was away from work for illness twice (on one of those occasions for two days), on account of the death of his brother for two days, on legal holidays (but not Jewish holidays), on visits to his old home in Virginia (which required twenty-four hours going and twenty-four hours returning), on vacations in the summer of 1939, in June or July, 1940, in July, 1941, and in May or June, 1942 (without giving the weeks, but saying that one of the vacations was for a week and possibly others were for a week each), he thinks he was never late in getting back from lunch and when on the early shift about once every two weeks he would get in for work about 5 or 10 minutes late.

In fine, while he gave certain hours as those at which he arrived for work in the morning, manifestly he was unable to identify the week or weeks, or the portion of either, when he was absent from work, whether on account of illness or the death of his brother, or of vacations, or of visits home to Virginia. Manifestly what he was giving or attempting to give was his habit.

While on the stand Bailey produced and looked at one memorandum for a particular day. This was not offered in evidence or exhibited to me. I feel justified in saying, therefore, that, in substance, his testimony was not corroborated by any writing.

I think the memory of Bailey was as good as, or perhaps even better than, that of the average witness. Yet (within the lines prescribed by the authorities heretofore cited), he has not established his claim by the measure of proof the law demands. It seems to me, therefore, that it must be disallowed.

I see nothing to be gained by discussion which would be repetitious. In connection with the Toppin claim I believe I have sufficiently commented on Bailey.

### VII.

In the circumstances there can be no allowance of liquidated damages or an attorney's fee. I think the defendants are entitled to a dismissal of the complaint, with costs.

Findings of fact and conclusions of law, with directions for judgment and its settlement on notice, will be filed by the court in the clerk's office.

Minutes of the testimony have not been furnished me; nor, so far as I know, have the stenographic notes been transcribed. There are some details (for example, figures about the area and duration of occupation by tenants of space in the building) which are not set out fully in my trial notes. While I have part of them and remember the general purport, I do not recollect them with sufficient accuracy to be sure that I can cover some of them as precisely as they should be stated in the findings of fact. If either side believe that I have mistaken any figures or percentages, amendments to findings of fact (pursuant to subdivision (b) of Rule 52, Federal Rules of Civil Procedure, 28 U.S. C.A. following section 723c) may be proposed not later than ten days after entry of judgment.