## COLLIER v. NEW RIVER & POCAHONTAS CONSOLIDATED COAL CO.
### Civ. A. No. 589.

District Court, S. D. West Virginia.
May 31, 1946.

H. E. Dillon, Jr., of Fayetteville, W. Va., and Kay, Casto & Amos, of Charleston, W. Va., for plaintiff.

Mahan & White, of Fayetteville, W. Va., for defendant.

MOORE, District Judge.

Plaintiff sues for the recovery of overtime compensation under Section 16 of the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. There is but slight conflict between the parties as to the amount of compensation to which plaintiff is entitled, if the plaintiff is, under the facts of the case, entitled to recover anything. The defense made is three-fold: (1) That the plaintiff was not employed in such a manner as to be "engaged in commerce or the production of goods for commerce," as provided in Sections 6 and 7 of the Act; (2) that if so engaged, he was within the exemption set out in Section 13(a) (1) of the Act wherein "any employee employed in a bona fide * * * local retailing capacity" is exempted from its provisions; and further, (3) that he was exempted under Section 13(a) (2) of the Act, which provides that it shall not apply to "any employee engaged in any retail or service establishment, the greater part of whose selling or servicing is in intrastate commerce."

Defendant owns and operates six retail stores whose total retail sales during the period for which plaintiff claims compensation amounted to approximately $1,200,000 annually. All the stores were located at comparatively short distances from one another in the State of West Virginia, in which State all of their retail sales were made. Approximately two-thirds of the merchandise sold in these stores was purchased from wholesalers outside the State of West Virginia.

In addition to merchandise ordered from wholesalers to be sold locally by the store at Minden, West Virginia, approximately one-third of that sold by the other five stores was also ordered through, and shipped to, the Minden store. Minden was the largest store of the group, its retail sales constituting 36.8% of the total retail sales. Merchandise was shipped to the Minden store pursuant to requisitions made by the manager of that store to the district office of defendant at Berwind, West Virginia, from which point the orders were sent out. These requisitions covered anticipated needs of the Minden store, and in part those of the other five stores. The merchandise was shipped by wholesalers to Minden, was unloaded there and placed on shelves or in piles in stock rooms connected with the various departments of the store. No merchandise was "ear-marked" for any particular store but shipments were made up and sent out to the other stores from week to week (sometimes oftener—sometimes less often) upon requisitions sent in by those stores. Occasionally, when items were not available in the stock rooms, they were taken from the shelves of the retail store at Minden and included in the shipments to the other stores. The Minden store also obtained from the same stock rooms the goods which were placed on its own shelves and sold by it at retail. Approximately one-third of all the merchandise shipped to the Minden store was later transferred through requisition and shipment to the other five stores. It is not in evidence that this same proportion prevailed in the drug department, but I assume by inference that it did.

Plaintiff was a department manager at the Minden store. His duties were confined entirely to the drug department. He kept a want list which included both mer-

chandise needed in the drug department at Minden, and that which he anticipated, from information sent in by the other stores, would be needed in their drug departments. From this list he made up requisitions for the desired merchandise, which were sent by the store manager at Minden to the district office at Berwind where orders were made out, as already stated.

The drug department at Minden was conducted in an annex to the main store building, and consisted of a one-story and basement structure, which was joined to and connected by doors with the larger two-story and basement main department store. The retail drug department occupied the street floor of this annex, and the drug stock room was in the basement. Plaintiff's main duties were performed in connection with the retail sale of drug store merchandise in the street floor of the annex.

When goods were received in the drug stock room plaintiff checked the invoices, marked prices on the items, and placed them either in shelves or on the floor in an orderly manner. When requisitions came in from defendant's other stores, plaintiff filled the requisitions by collecting the items and grouping them for shipment, after which the shipments were handled by shipping clerks. About four times a year plaintiff assisted in making an inventory of the drug stock room.

The first question to be considered is whether or not, from the foregoing facts, the plaintiff's employment was such that he was "engaged in commerce or the production of goods for commerce." If the progress of the goods received at Minden and later transferred to the other stores can be defined as continuous; that is, if their flow in the stream of commerce was uninterrupted by coming to rest when received at Minden, then it seems clear that they remained a part of commerce until final delivery at the retail establishment at which they were to be sold. From this viewpoint it is immaterial whether defendant's organizational character was that of a chain store or whether it might be better characterized by some other name. It is also immaterial that defendant owned all the re-

tail outlets, or that they were all located in the State of West Virginia. Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S.Ct. 332, 87 L.Ed. 460; Walling v. American Stores Co., 3 Cir., 133 F.2d 840.

If, in fact, the goods were in commerce or were a part of commerce during all the time plaintiff performed services with relation to the goods, that fact fixed his status as being engaged in commerce.

■ I am of opinion that the circumstances of the handling of the goods at Minden show that they did not come to rest there so as to lose their interstate character. This applies, of course, only to the merchandise which was transferred from Minden to the other stores. Very little of it was transferred in original packages, but it was known beforehand approximately what items, and how many of each item, would be needed at the other stores, and these needs were filled substantially in accordance with the original requisitions. It is not necessary that one be able to lay his hand upon a particular item and say that this item was destined to be carried from its point of origin outside of the State to its resting place upon the shelf of a particular retail store. It is enough that the general purpose of shipment from an outside source to the retail store be accomplished through the medium of temporary warehousing at a way station on the line of shipment, even though at the warehouse the goods may be commingled with a general stock, a large part of which is to be retailed at the point of warehousing.

It is clear, therefore, that insofar as plaintiff's working time in connection with approximately one-third of the merchandise handled by the drug department is concerned, he was to that extent engaged in commerce within the meaning of the Act.

This brings me to the question of whether plaintiff was exempt from coverage by reason of being employed in a bona fide local retailing capacity as provided in Section 13(a) (1) of the Act, and as defined by the Administrator in the regulations promulgated pursuant to the authority of Section 13(a) (1). The pertinent regula-

tion is found in Part 541.4, Title 29, Chapter V, Code of Federal Regulations, as follows:

"The term 'employee employed in a bona fide * * * local retailing capacity' in Section 13(a) (1) of the Act shall mean any employee,

"(a) Who customarily and regularly is engaged in,

"(1) Making retail sales, the greater part of which are in intrastate commerce; or

"(2) Performing work immediately incidental thereto, such as the wrapping or delivery of packages, and

"(b) Whose hours of work of the same nature as that performed by non-exempt employees do not exceed 20% of the number of hours worked in the work week by such non-exempt employees."

It was shown in evidence that defendant employed shipping clerks whose duties in connection with the receipt and shipment of merchandise were of the same nature as those performed by the plaintiff. It was not exactly the same work, inasmuch as the shipping clerks did the actual handling of the incoming and outgoing merchandise, whereas plaintiff's duties were partly clerical. However, these shipping clerks were clearly non-exempt employees, and it is not significant that their duties were not exactly the same as those which devolved upon plaintiff. They nevertheless furnish a proper measure for use in classifying plaintiff with respect to the foregoing regulation.

The shipping clerks were employed 51 hours each week in that particular work. Therefore, if the plaintiff is to be given the benefit of the Act, it must appear from the evidence that he was employed at least 10.2 hours each week in connection with the same or the same kind of merchandise handled by the shipping clerks.

In my opinion, plaintiff has failed to prove by a preponderance of the evidence that he devoted as much as 10.2 hours in any week to duties pertaining to any of the merchandise other than in the retail sale thereof. Plaintiff testified that he spent between 35% and 40% of his time in such duties. If this testimony were accepted as reliable, it would follow that he worked in this way between 21 and 25 hours each week. However, he did not go into any detail whatsoever to show that this estimate of 35% to 40% was anything more than a vague impression left upon his recollection of matters which occurred more than four years prior to the time he testified. He gave not even an estimate of the length of time required for each or any particular work which he did in this connection, and this work was so tied in with his other duties with no particular periods of time allotted for doing the particular tasks that, in my opinion, the estimate was utterly unreliable. On the other hand, two witnesses, for the defendant, who were in an equally advantageous position with the plaintiff to know whereof they spoke, testified that he spent approximately 90% of his time in the retail department of defendant's drug store, exclusively engaged in retail selling.

Plaintiff waited more than three and one-half years after separation from his employment before making claim for compensation for overtime work. This in itself would not defeat his claim, but it is so indicative of lack of substantial foundation that clear and convincing proof was required in order to establish it. Toppin v. 12 East 22nd Street Corporation, et al., D.C.N.Y., 1944, 55 F.Supp. 887. Spier v. Gulf Coast Beverages, Inc., D.C.Fla., 1943, 50 F.Supp. 653.

Plaintiff's own testimony might be given somewhat greater weight than that of defendant's witnesses, because of the greater interest which one naturally takes in his own activities than do others, but for the fact that defendant also produced evidence which showed that the actual time spent by the person who is now occupying the position which plaintiff then occupied in performing those duties, which he estimated took between 35% and 40% of his time, is only 7 hours and 20 minutes per week, and that the total volume of such work now required is not less, but probably greater than it was during the period of plaintiff's employment.

I am impelled to believe from the preponderance of the evidence that plaintiff

292

did not spend as much as 10.2 hours per week in work other than that connected with his duties as retail drug store manager.

 It is urged by defendant that plaintiff's time spent in connection with the merchandise in the stock room should be further reduced by 36.8%, because there was sold at the Minden store itself at retail that percentage of the total sales of the group of stores. This contention is based on two misconceptions: (1) 36.8% does not represent the percentage of goods passing through the Minden stock room which were sold at retail at the Minden store. On the contrary, approximately two-thirds of the goods received at Minden were sold at retail there, as has already been stated. (2) The shipping clerks, with whose hours the hours of plaintiff must be compared, devoted their time to the handling of all merchandise received at Minden and not merely to that which was afterwards shipped out to the other five stores. The true comparison, therefore, must be between the total time spent in each week by the shipping clerks and that spent by plaintiff in connection with his duties in the stock room as distinguished from his retail duties upstairs.

 As to the third contention of defendant, namely, that plaintiff was exempt from the coverage of the Act because he was engaged in a retail or service establishment, the greater part of whose servicing or selling was in intrastate commerce, as provided in Section 13(a) (2) of the Act, it is enough to say that, as pointed out in many of the cases, the intention of Congress in inserting this exemption was solely to make clear that the Act should not apply to such retail or service establishments as may be situated near State lines in such a way that a small part of their retail business is transacted across such lines. Phillips, Inc. v. Walling, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095, 157 A.L.R. 876; Walling v. American Stores Co., supra; Roland Electrical Co. v. Walling, 66 S.Ct. 413.

I am of opinion that an establishment such as that of defendant is not covered by the exemption in Section 13(a) (2).

My conclusion, therefore, is that plaintiff was employed by defendant in interstate commerce within the meaning of Sections 6 and 7 of the Act; that defendant's contention that plaintiff was exempted under Section 13(a) (2) must fail; but that plaintiff has failed to prove by a preponderance of the evidence that his hours of work of the same nature as that performed by non-exempt employees of the defendant exceeded 20% of the number of hours worked in any work week by such non-exempt employees.

The plaintiff's complaint must therefore be dismissed and an order to that effect may be presented for entry.