## GEORGE LAWLEY & SON CORPORATION v. SOUTH.

### No. 3937.

Circuit Court of Appeals, First Circuit.

Feb. 4, 1944.

Varnum Taylor, of Boston, Mass., Wm. Gardner Perrin, and Taylor, Ganson & Perrin, all of Boston, Mass., for appellant.

Joseph G. Bryer, and Thomas H. Mahony, both of Boston, Mass., for appellee.

Before MAGRUDER, MAHONEY and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

This is an appeal by the defendant from a judgment entered for the plaintiff on a special verdict returned for him in an action brought to recover unpaid overtime compensation in the amount of $3,870.56, plus an additional equal amount as liquidated damages, a reasonable attorney's fee and costs under § 16 (b) of the Fair Labor Standards Act of 1938, 52 Stat. 1060 et seq., 29 U.S.C.A. §§ 201–219.

The defendant is a Massachusetts corporation which for many years has maintained a plant on the Neponset River in Dorchester where it has carried on the business of building, repairing and storing yachts. For the past two or three years it has been largely if not exclusively engaged in building and repairing boats and small vessels for the United States Government. It admits that its business in general is in interstate commerce and that the plaintiff while in its employ was engaged in the production of goods for such commerce.

In May, 1934, it employed the plaintiff as a bookkeeeper at a salary of $35 per week. At that time it employed one other person in that capacity and also a head bookkeeper who acted as office manager. Some six weeks or two months after the date of the plaintiff's employment this head bookkeeper and office manager resigned and the plaintiff assumed that official's duties in addition to his own. At this time the plaintiff's salary was increased to $50 per week. As time went on the amount of bookkeeping increased, more bookkeepers were hired, and the plaintiff's salary was stepped up so that by October 24, 1938, the date when the Fair Labor Standards Act of 1938 took effect, he was receiving $75 per week. In 1937 in the employment record which the plaintiff kept for the defendant in compli-

ance with the Social Security Act, 42 U. S.C.A. § 301 et seq., he described his occupation as "office manager and accountant" although he testified on the stand that throughout his entire employment by the defendant he spent at least 85;% of his time actually working on the defendant's books as a bookkeeper.

On December 24, 1938, just two months after the effective date of the Fair Labor Standards Act, the plaintiff was elected a director and the treasurer of the defendant corporation. As such his pay was not increased but he was paid on a monthly instead of a weekly basis, receiving $325 per month. He testified that this change did not operate to relieve him of any of his former duties and that he still continued to spend the great majority of his time as an ordinary bookkeeper, but he admitted that upon his election to office in the defendant corporation he assumed some additional duties. In February, 1941, his salary was increased to $435 per month, or $98.08 per week. On October 27, 1941, he and the defendant parted company—he says he was discharged, the defendant that he resigned on request—at which time there were about twenty office employees under his supervision.

The plaintiff admits that he made no demand upon the defendant for compensation for overtime during his employment and that he never kept any record, either in his office or at home, of the number of overtime hours he worked. He gave as his reason for this that he was in doubt whether the Fair Labor Standards Act applied to him. He conceded, however, that in September, 1941, he was told by a representative of the Wage and Hour Division of the Department of Labor that the Act did apply to him, but it does not appear that even then he began to keep any record of his overtime or made any demand for overtime compensation. It does appear, however, that on the day after the severance of his relations with the defendant he made demand on the defendant's president for time and a half for the overtime which he had worked during the last year of his employment.

The defendant below, the appellant here, advances three reasons why the plaintiff-appellee is not entitled to prevail. It contends that he failed to produce sufficient evidence of the number of hours of overtime he worked; that he is estopped from claiming any overtime at all; and that the Act does not apply to him because he was employed by the defendant in a bona fide executive or administrative capacity. We shall consider these contentions in the order of their enumeration.

As already noted the plaintiff kept no record whatever of the number of hours of overtime he worked. To prove his case he came into court with his wife's diary and a summary or analysis based upon some of the items therein which he and his wife had prepared about a year before the trial. The plaintiff did not offer these documents as exhibits, counsel for the defendant having objected, but used them to refresh his recollection, to which counsel for the defendant did not object. We are not, therefore, concerned with the admissibility of the evidence offered by the plaintiff; what we are concerned with is its sufficiency.

■ Counsel for the defendant contends, and counsel for the plaintiff appears to concede, that in cases of this sort the plaintiff not only has the burden of persuasion as to the number of hours of overtime worked each week and the amount of wages due each pay period, but that to prevail he must also establish the hours of his overtime definitely and with certainty. We agree to the first clause, and taking the last clause to mean no more than that the plaintiff must produce evidence definite enough to permit a finding without resort to guess or conjecture that he worked some particular number of overtime hours, we agree to that also. Jax Beer Co. v. Redfern, 5 Cir., 124 F.2d 172, 175; Johnson v. Dierks Lumber & Coal Co., 8 Cir., 130 F.2d 115, 118; Joseph v. Ray, 10 Cir., 139 F.2d 409, decided December 24, 1943. We turn now to the nature of the plaintiff's proof.

Since neither the diary kept by the plaintiff's wife nor the summary or analysis made up from it were put in evidence, they are not before us and so we cannot refer to either of them directly. However, certain apparently typical entries in the diary were read into the record and from them and the testimony of the plaintiff and his wife it seems apparent that few of the entries even purported to record the actual number of hours of overtime worked by the plaintiff on any given day. Most of the entries appear to be vague and general in this respect but nevertheless the plaintiff testified they were sufficient to refresh his recollection so that

442

by looking at them he could testify as to the exact number of hours of overtime he had worked on any particular day.

To illustrate: The entry in the diary under the date of October 25, 1935, reads: "C.J.[1] Work. I ate at Johnson's at station. Went to hairdresser's. Dollar shampoo, wave. Home at 8:30. C.J. was there", and this entry, the plaintiff says, recalled to his mind that on that day he worked three hours overtime on the defendant's books. The entry for February 1, 1940, was "C.J. worked" and then, after a description of what the keeper of the diary did, concluded with the statement that she and her husband went to bed at 10:30. From this the plaintiff said he could remember that he worked four hours overtime on that day. The entry for Sunday, December 3, 1939, is rather more specific. It reads: "Went to the plant at 10:00 o'clock, home at 2:00 C. J. worked on books from 3:00 to 9:00, I guess."

█ Entries such as these are enough to recall to the plaintiff's mind that he worked overtime on the days to which they relate, and it is not wholly beyond the bounds of credulity to believe that some of them may have refreshed the plaintiff's recollection as to the precise amount of overtime worked on some particular occasions. He testified to this effect and the jury, who saw him and observed his manner on the stand, believed him in part and in part disbelieved him. (The special verdict was for substantially less than his claim.) Since we cannot say as a matter of law that the entries are wholly useless to refresh recollection, although possibly upon inspection of the diary the court below in its discretion might have said so if it had been asked, we must assume for the purposes of this appeal that the plaintiff actually worked the amount of overtime found by the jury.

We come now to the defendant's second contention.

█ On October 24, 1938, there was imposed upon the defendant by the Fair Labor Standards Act an absolute duty to pay currently to each of its employees in fact within the coverage of the Act for overtime "at a rate not less than one and one half times the regular rate" at which employed. 29 U.S.C.A. § 207. To per-form this duty the defendant had to decide at its peril which of its employees were within the coverage of the Act and which were not, and, also at its peril, it had to keep track of the amount of overtime worked by those of its employees in fact within the Act. See Overnight Motor Transportation Co., Inc., v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682. Thus, if the plaintiff was an employee within the Act, as he now claims to have been, his right to recover in this action would not be barred by his failure during his employment to demand compensation for his overtime. But, even if the plaintiff was within the Act for the reason that he spent 85% of his time actually working on the defendant's books, still he was also undoubtedly something more than just an ordinary bookkeeper. As a matter of record he was one of the defendant's directors and its treasurer during very nearly all of the period of his employment which elapsed after the effective date of the Act, and he testified that he was the defendant's office manager during all of that period, in which capacity it appears that one of his duties was to attend to the payment of the members of the office force for their overtime as the Act required.[2] To be sure the plaintiff at one point in the trial denied that the defendant had delegated this duty to him, but at another point he testified categorically to the contrary, and he also testified that he in fact performed it by computing each office employee's overtime and calculating each one's pay from records kept by each one individually. Furthermore it appears that all of the overtime records of the office employees, except the records for one week, were in the plaintiff's handwriting. From this, and since an office manager is the kind of employee upon whom the duty to attend to overtime payments to office employees would naturally be expected to devolve, it seems to us that the only fair assumption is that one of the duties which the plaintiff owed to his employer was to see to it that records were kept of the overtime worked by those of the office employees who were determined to be covered by the Act and that another of his duties was to see that such employees were paid for their overtime as the Act required.

---

[1] These initials were used by the diarist to refer to her husband, the plaintiff.

[2] We must assume that he performed this duty in his capacity of office manager and not as treasurer and director because it appears that he performed it ever since the effective date of the Act.

██ Now admittedly the plaintiff kept no office record of his own overtime and we cannot say that he acted deceitfully in failing to do so because the question of his deceit was specially put to the jury and answered in the negative. Nor can we say that the plaintiff was charged by his corporate employer with the duty of deciding for it and at its peril whether or not he, himself, or any of the other office workers were covered by the Act.[3] If the plaintiff had had this latter duty, and as a corporate officer had decided that he was not an employee covered by the Act, it is clear that he could not thereafter be heard to say that his decision was erroneous and in consequence that he was entitled not only to compensation for his overtime at once and half his regular wage but also to an additional equal amount as liquidated damages. He would clearly be estopped from taking personal advantage of an erroneous position which he had himself caused his employer to take. But when, as here, the plaintiff, being in doubt as to his status, failed only in his duty to his employer to keep a record of his own overtime and to pay himself for it—duties to which he was specifically subjected only if his employer had decided that he was within the Act—the question is not so easy. It can be argued that even if the plaintiff had from the beginning kept an office record of his overtime and claimed payment for it, still his employer would not have paid him but would from the outset have taken the position it takes now, that is, that the plaintiff was excluded from the benefits of the Act because he was employed in an executive or administrative capacity. On the other hand, it can be argued that because of the plaintiff's failure to keep an office record of his overtime and because of his failure to ask compensation for it, his employer was left in ignorance of the fact that he was working overtime (it appears that a substantial part of the plaintiff's overtime was worked at his home) and that this permitted his ambiguous position to continue with the result that a possible obligation on the defendant to pay time and a half doubled accumulated as time went on; an obligation which the defendant might have halved by deciding that the plaintiff was within the Act

and paying him currently for his overtime, or might have wholly prevented by hiring another bookkeeper at $19 to $25 [4] per week, and thus relieved the plaintiff of any necessity for working overtime at his high rate of pay.

It seems to me, in view of the plaintiff's admitted knowledge of the absolute nature of the obligation imposed upon the defendant by the Fair Labor Standards Act, and in view of the fact that the plaintiff as an employee on a salary of $5,000 per year was charged with the responsibility of attending to the defendant's obligations under the Act to its office workers, the group in which the plaintiff now claims he belonged, that if he was in doubt as to his status under the Act he was clearly derelict in his duty as treasurer and director in not bringing that doubt to the attention of other officers of his corporate employer so that it could have protected itself against his claim if it had seen fit to do so. Not having done so it seems to me inequitable and unjust that the plaintiff should be allowed to recover double damages, and, since under the statute we are not free to allow him to recover anything less, we should not allow him to recover anything at all. In short I think we should construe the Act in the light of the strong equities here disclosed in favor of the defendant and not permit the Act to be invoked to work an unfair, harsh and burdensome result which does not in any way advance its purpose to relieve unemployment among, and improve the wages of, the workers in the lower income groups.

My associates, however, do not share this view. They have come reluctantly to the conclusion that since there is an express finding that the plaintiff had practiced no deceit and that he was not estopped, the statute must be applied literally according to its words and recovery allowed for the full amount permitted by the Act.

This brings us to the third and last of the defendant's contentions; the contention that the plaintiff is exempted from the Act because he was employed in an executive or administrative capacity.

Section 13 (a) of the Fair Labor Standards Act, 29 U.S.C.A. § 213(a), in part provides that "The provisions of sections

---

[3] We say this because of the state of the record although it is hard to see how as treasurer and director he can wholly escape responsibility for such decisions.

[4] This appears from the record to have been the prevailing wage in Boston for such work during the period in question.

6 and 7 shall not apply with respect to (1) any employee employed in a bona fide executive, administrative, * * * capacity * * * (as such terms are defined and limited by regulations of the Administrator) * * *." On the date when the Act took effect the term "employee employed in a bona fide executive [or] administrative * * * capacity" was defined by the administrator to "mean any employee whose primary duty is the management of the establishment, or a customarily recognized department thereof, in which he is employed, and who customarily and regularly directs the work of other employees therein, and who has the authority to hire and fire other employees or whose suggestions and recommendations as to the hiring and firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight, and who customarily and regularly exercises discretionary powers, *and who does no substantial amount of work of the same nature as that performed by nonexempt employees of the employer,* and who is compensated for his services at not less than $30 (exclusive of board, lodging, or other facilities) for a workweek."

Since the component parts of this regulation are stated in the conjunctive, an employee must come within all of them in order to be exempt from the benefits of the Act. So although the plaintiff admittedly comes within all but the one italicized by us above, he is not exempt as an executive or administrative employee because as to that one the evidence is conflicting. He says, and it is corroborated, that he spent 85% of his time actually working on the defendant's books as an ordinary bookkeeper. From this, in spite of evidence to the contrary, the jury were clearly warranted in finding as they did that he was a nonexempt employee.

The above regulation, however, was supplanted on October 24, 1940, by a new one. Under it executive and administrative employees were separately defined. It defines one employed in a bona fide executive capacity in much the same terms, although they are arranged in different form, as were used in the earlier regulation defining both executive and administrative employees. The later regulation, however, did not use the word "substantially" with reference to the amount of work similar to that performed by non-exempt employees, but instead provided that an employee should be exempt unless his "hours of work of the same nature as that performed by nonexempt employees do not exceed 20% of the number of hours worked in the workweek by the nonexempt employees under his direction". What we have already said indicates that the plaintiff could be found on his testimony to be nonexempt as one employed in a bona fide executive capacity under this later definition. But the defendant contends that the regulation does not mean 20% of the hours worked by the employee whose status is being determined. It says that the regulation must be taken to mean that an employee to qualify as an executive cannot perform work of the same nature as that performed by nonexempt employees for more than 20% of the number of hours worked in the workweek by all of the nonexempt employees under his direction put together. In other words, it argues that the basis for estimating the 20% is the total number of hours worked by all of the employees under the direction of the one whose status is under consideration.

We must admit that grammatically construed the regulation means what the defendant says that it does, but if it is so construed every employee no matter what his duties, would be exempt under this clause of the definition if there were five or more employees working under him. In view of the arbitrary result which would follow from interpreting the regulation as the defendant would have us, we do not think that the administrator could have meant exactly what he said. Instead we think he must have meant merely to define a "substantial amount" in exact terms of percentage. See Ralph Knight, Inc., v. Mantel, 135 F.2d 514, 516 et seq.

There is, however, another possible interpretation of the confusing language of the definition of executive employees contained in this revised regulation—"hours of work of the same nature as that performed by nonexempt employees do not exceed 20% of the number of hours worked in the workweek by the nonexempt employees under his direction". If an employer should be asked how many hours his men worked a week he would answer 40 or 42 or 48, giving the number of hours which each one of his employees customarily worked. He would not interpret the question as an inquiry of the

number of man hours per week worked in his plant which would require multiplying the number of hours in his workweek by the number of his employees. So in the revised regulation the "number of hours worked in the workweek by the non-exempt employees under his direction" might mean simply the number of hours that the individual employees worked in any particular week.

We need not decide whether this interpretation or the one suggested first above is correct because on the disputed testimony the result here would be the same in either case.

In this later regulation the administrator defined an "employee employed in a bona fide * * * administrative * * * capacity * * *" as an employee

"(a) who is compensated for his services on a salary or fee basis at a rate of not less than $200 per month (exclusive of board, lodging, or other facilities), and

"(b) (1) who regularly and directly assists an employee employed in a bona fide executive or administrative capacity (as such terms are defined in the regulations in this part), where such assistance is non-manual in nature and requires the exercise of discretion and independent judgment; or

"(2) who performs under only general supervision, responsible nonmanual office or field work, directly related to management policies or general business operations, along specialized or technical lines requiring special training, experience, or knowledge, and which requires the exercise of discretion and independent judgment; or

"(3) whose work involves the execution under only general supervision of special nonmanual assignments and tasks directly related to management policies or general business operations involving the exercise of discretion and independent judgment."

Unlike the others, this regulation, except for the requirement as to salary with which the plaintiff conforms, is written in the disjunctive. So, if the plaintiff falls within any of the subparagraphs under (b) he would be exempt. There is plenty of evidence that his work brought him within all of them, but, on the other hand, there is evidence to the contrary.

He testified that although he had the color of administrative authority in reality he exercised administrative duties only under the closely controlled supervision of other corporate officers. In other words, he said in substance that he was in reality merely a combination bookkeeper and messenger who only paraded in the plumage of an administrative official, and in spite of the undisputed evidence of the amount of his salary, the jury believed him. Thus there is some evidence to support the finding that the plaintiff was not exempt from the Act and it follows that the verdict must stand.

The judgment of the District Court is affirmed with costs to the appellee.