**WAGNER v. AMERICAN SERVICE CO.**
Civil Action No. 106.

District Court, S. D. Iowa,
Davenport Division.

Nov. 17, 1944.

Wayne G. Cook, of Davenport, Iowa, for plaintiff.

Lane & Waterman, of Davenport, Iowa, for defendant.

DEWEY, District Judge.

LeRoy A. Wagner brings this suit against his former employer, American Service Company, a corporation, to recover overtime compensation, liquidated damages and attorney fees, as provided by Sections 6, 7 and 16(b) of the Fair Labor Standards Act of 1938, 29 U.S.C.A. §§ 201–219.

Trial was had before the court, without a jury, at Davenport, Iowa, on October 31 to November 2, 1944, and the case was duly argued and submitted.

Defendant denies plaintiff's contention that he was engaged in interstate commerce or in the production of goods for commerce and alleges that plaintiff's employment was that of a bona fide executive or administrator and that he was employed in a local retailing capacity and hence not within the coverage of the Act.

The defendant is engaged in the manufacture and sale, both at retail and wholesale, of artificial ice, and in the buying, selling and delivering of coal, in the city of Davenport, Iowa. It owns and operates some 60 to 90 ice plants, but we are only interested with the branch plant at Davenport, Iowa, under the general supervision of the headquarters of defendant corporation at Kansas City, Mo.

C. S. Wagner, father of the plaintiff, was during the time of the matters here in controversy the general manager of the Davenport branch. Plaintiff was chief engineer and superintendent of the foremen of the plant at Davenport on and prior to Oct. 24, 1938, at a salary of approximately $250 per month, and continued as such until on or about the first day of January, 1941, when his salary was increased to about $265 per month, which higher rate of compensation continued until he terminated his services with the defendant corporation on or about January 1st, 1942.

While the plaintiff exercised many of the duties of an executive, there is no doubt but that a large percentage of his work was manual labor in and about the defendant's plant at Davenport, Iowa, and such work took him out of the classification of an executive within the meaning of the Act. Joseph v. Ray, 10 Cir., 139 F.2d 409; George Lawley & Son Corp. v. South, 1 Cir., 140 F.2d 439, 151 A.L.R. 1081.

The claim of the defendant that the plaintiff's employment was in a retail or service establishment is also without merit. The main activity of defendant company at the plant where the plaintiff worked was the manufacture of artificial ice. Collins v. Kidd Dairy & Ice Co., 5 Cir., 132 F. 2d 79; Davis v. Goodman Lumber Co., 4 Cir., 133 F.2d 52.

The statutory scope of the Act is to cover each employee who is engaged in commerce or in the production of goods for commerce. Walling v. Mutual Wholesale

Food & Supply Co., 8 Cir., 141 F.2d 331, 335.

The evidence establishes without question that the defendant in the manufacture of artificial ice was engaged in the production of "goods" within the definition of "goods" contained within the Act. Sec. 203(i). And that the activities of the plaintiff at all times primarily had to do with the manufacture of artificial ice and his work was necessary for the production of such goods.

The plaintiff having unquestionably established that his employer, the defendant, was engaged in the production of goods and that he performed manual labor in connection therewith necessary for such production, leaves the question for determination whether the goods so produced were for interstate commerce.

The sale of the ice was primarily for the retail and wholesale trade in Davenport, Ia. Defendant operated regularly about 15 trucks, 12 of them for the sale and delivery of ice to customers within the City and the other three for the delivery to convenient points to be there picked up by other trucks for sale and distribution. The sales were made at retail to the homes and in wholesale quantities to distributors located throughout the City.

Plaintiff's compensation was based on an hourly rate of 60 cents an hour for a 65-hour week with an additional payment of $85 a month for supervision duties from Oct. 24, 1938, to January 1, 1941, and from that date until plaintiff left the employ of the defendant on January 1, 1942, his compensation was based on an hourly week of 70 hours at the rate of 60 cents an hour and $85 a month.

While it is not claimed by the defendant that the $85 per month received by the plaintiff was to pay for overtime, yet even if there was such an agreement it would not be available to the defendant in offsetting the claim for overtime. See recent case of Walling v. Helmerich & Payne, Inc., 65 S.Ct. 11.

On or about October 24, 1938, Mr. Earl Mulley, who was secretary-treasurer of the defendant corporation and a resident of Kansas City, Mo., talked with Mr. C. S. Wagner at the Davenport plant and told him not to deliver ice to any person, firm or corporation engaged in interstate commerce; that such deliveries did not exceed one per cent. or a fraction thereof of the business of the corporation.

However, both prior and subsequent to that date the defendant corporation through its branch plant at Davenport, Ia., did make sales and deliveries of artificial ice to persons, firms or corporations engaged in interstate commerce, and there seems to have been no difference in this regard from and after October 24, 1938, to that which had been in force prior to that time. The corporation during this period sold ice to railroads for air conditioning and icing drinking water and also iced some refrigerator trucks for the Zoller Brewing Company and the Pioneer Transportation Company, knowing that the icing of such trucks was to protect goods to be transported outside of the State of Iowa. There is also a claim that the defendant company furnished ice cubes to some regular customers from Rock Island, Ill., and furnished ice for excursion boats on the Mississippi River.

The plaintiff does not tell us the amount or volume of the ice so furnished and the defendant did not pursue the subject. This situation presents several interesting questions:

1st. Is the manufacturing and furnishing of ice to protect or preserve goods being shipped in interstate commerce a production of goods for commerce?

2nd. Is it necessary to show the amount, percentage or volume of the ice so manufactured and intended to be shipped in interstate commerce? And

3d. Must it be established that the amount or volume of the goods that went into interstate shipments was substantial, or is it sufficient if any of the manufactured ice intended for interstate commerce reached that commerce?

From the authorities it would appear that the question of whether an employee is within the terms of the Act, where his work is necessary for the production of goods for interstate commerce, is not whether the goods were transported by the employer, but whether the goods so manufactured were intended for interstate commerce. The fact that there was an intermediary between the sale and the shipment is immaterial. Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 63 S.Ct. 125, 87 L.Ed. 83; Hamlet Ice Co. v. Fleming, 4 Cir., 127 F.2d 165; Walling v. Peoples Packing Co., 10 Cir., 132 F.2d 236.

It is also apparent from the definitions that "commerce" includes "trans-

portation" and "transmission," and hence the definition of "commerce" is broader than the legal definition of what constitutes commerce as heretofore defined by the Supreme Court of the United States. It seems to me therefore that although the ice was furnished for the protection and preservation of goods being transported in interstate commerce, and though it was not for commerce in the sense that it was not for trade but was expendable, yet it was produced for transportation and transmission from one state to another. That ice is "goods" and that the transportation thereof from one state to another constitutes "commerce" has also been determined by the authorities. Hamlet Ice Co. v. Fleming, 4 Cir., 127 F.2d 165; Collins v. Kidd Dairy & Ice Co., 5 Cir., 132 F.2d 79.

■ It has been determined that it is unnecessary to show that any particular percentage of the manufactured goods should reach interstate commerce; Walling v. Peoples Packing Co., 10 Cir., 132 F.2d 236; nor is it necessary to show the amount or volume of the goods shipped in interstate commerce, for if any amount reaches interstate commerce that would appear to suffice. United States v. Darby, 312 U.S. 100, 123, 61 S.Ct. 451, 85 L.Ed. 609, 132 A.L.R. 1430; Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 91, 63 S.Ct. 125, 87 L.Ed. 83.

Some of the circuit courts of appeal cases do indicate that to be effective the amount of goods manufactured for commerce must be substantial. However, in the above case of United States v. Darby, supra, this requirement appears to be eliminated as under the doctrine of that case if any amount reaches interstate commerce, it is sufficient.

The defendant calls attention to several cases wherein the courts determine that if the amount of sales for interstate commerce was incidental or inconsequential, they should not be considered as interstate commerce. Such cases are: Goldberg v. Worman, D.C., 37 F.Supp. 778; Cron v. Goodyear Tire & Rubber Co., D.C., 49 F. Supp. 1013; Berry v. 34 Irving Place Corporation, D.C., 52 F.Supp. 875; Couch v. Ward, 205 Ark. 308, 168 S.W.2d 822. However, these cases are authority for the rule that the volume and amount of the commerce are unimportant. The doctrine that they do seek to establish is that the interstate commerce must be substantial in the sense that it is not inconsequential or trifling or immaterial in volume or amount.

■ Defendant was in the business of manufacturing and selling artificial ice. It was more or less accidental that the great proportion of the sales and distribution were intrastate commerce. It was actively engaged in selling ice to all comers, whether the sales were intended for interstate shipment or intrastate trade, and this situation prevailed both prior and subsequent to the time of the passage of the Act. As a portion of the company's business in its ordinary course of trade encompassed the sale wherever possible to shippers and interstate transportation agencies, I could not say that the interstate shipments were inconsequential or trifling. Schmidt v. Peoples Telephone Union of Maryville, Mo., 8 Cir., 138 F.2d 13.

■ Defendant also strenuously contends that the number of hours employed is speculative and not of sufficient definiteness and certainty to support a finding of the number of hours actually employed. It may be conceded that the burden of proof is upon the plaintiff to show that he did work more than the maximum hours and that the evidence must be such that the court can determine with reasonable certainty the overtime actually worked. Johnson v. Dierks Lumber & Coal Co., 8 Cir., 130 F.2d 115, 119; Joseph v. Ray, 10 Cir., 139 F.2d 409, 411; George Lawley & Son Corp. v. South, 1 Cir., 140 F.2d 439, 151 A.L.R. 1081; Warren-Bradshaw Drilling Co. v. Hall, 317 U.S. 88, 63 S.Ct. 125, 87 L.Ed. 83.

■ I think the court can with reasonable certainty determine this question. The books of the company set out the number of hours plaintiff worked on each day and they are certainly to be considered as admissions against its interest. Plaintiff testified that he did in fact work more hours than are shown by the books and goes into considerable detail with reference to the necessity for and the hours worked by him, which, at least, corroborates the company's books. I am satisfied that the plaintiff has established with reasonable certainty that he worked at least 65 hours a week during the entire time of his employment. Joseph v. Ray; George Lawley & Son Corp. v. South; Johnson v. Dierks Lumber & Coal Co., all supra.

I therefore make the following findings of fact and conclusions of law:

### Findings of Fact.

1. That from October 24, 1938, to January 1, 1942, the defendant was engaged in the manufacture and processing of artificial ice to be sold either at retail or wholesale, and that a part of it was intended for and did enter interstate commerce.

2. That that part entering into interstate commerce was in the ordinary course of trade or business and was not incidental, inconsequential or trifling in volume or amount.

3. That the work of the plaintiff was necessary in the production of the artificial ice.

4. That plaintiff was not employed in a bona fide executive, administrative, official, or local retailing capacity, as those terms are defined by the regulations of the Administrator of the Act.

5. The books of the company do not correctly reflect the number of hours worked by the plaintiff during the period in question, but the plaintiff did work at least 65 hours a week during the entire period for which claim is made and that the plaintiff has established definitely that he did work that number of hours in each week.

### Conclusions of Law.

1st. That the plaintiff is entitled to recover for one-half of the overtime hours that he worked during the several periods covered by the Act and an equal amount additional as liquidated damages, and that such overtime should be figured under the rule established by the case of Overnight Motor Transp. Co. v. Missel, 316 U.S. 572, 62 S.Ct. 1216, 86 L.Ed. 1682.

2nd. There should also be assessed as against the defendant an attorney fee in the sum of $500 for the benefit of plaintiff's attorney.

3d. Plaintiff is entitled to the relief demanded according to the above figures, with costs.

Defendant excepts to each and every finding of fact and conclusion of law above set forth.

The attorney for plaintiff may prepare a judgment entry in conformity with the above findings of fact and conclusions of law and submit the same for signature or settlement, if any controversy arises.