**BLOCH v. BELL et al.**

No. 759.

District Court, W. D. Kentucky,
Louisville Division.

April 14, 1945.

Jones, Keith & Jones and Cohen & Fisher, all of Louisville, Ky., for complainant.

Morris, Garlove & Goldsmith and Carl K. Helman, all of Louisville, Ky., for defendants.

MILLER, District Judge.

The complainant Abraham Bloch brought this action as an employee of the defendants W. H. Bell and J. L. Gerrard to recover unpaid wages in the amount of $1344.91, together with liquidated damages in the same amount and attorney's fee, under the provisions of the Fair Labor Standards Act of 1938, 29 U.S.C.A. § 201 et seq. The defendants claim that the complainant is exempt from the provisions of the Act and in any event the evidence is not sufficient to establish the claim.

## Findings of Fact

1. On January 20, 1941, Irvin Sotsky and the defendant J. L. Gerrard were partners trading and doing business as the Scot Woolen Company in Louisville, Kentucky. They were engaged in the manufacture of men's suits and wearing apparel in accordance with orders received from customers in other states. After manufacturing the article the Company would ship it to the purchaser at his designated address in the other state. It is stipulated by the parties that the Company and the complainant herein, as one of its employees, were engaged in interstate commerce. On January 1, 1942, the partnership business was incorporated under the same name and the corporation took over the assets of the partnership and continued its business. Upon incorporation the defendant W. H. Bell became a stockholder along with Sotsky and Gerrard. On December 31, 1943, the corporation was dissolved and its business was taken over and thereafter operated by the defendants W. H. Bell and J. L. Gerrard.

2. The complainant Abraham Bloch was employed by the Scot Woolen Company on January 20, 1941, and continued in its employ until January 7, 1944. His original compensation was $30 per week, which was later increased to the amounts indicated at the following times:

$33 per week on May 1, 1941.

$35 per week on September 6, 1941.

$40 per week on October 4, 1941.

$42 per week on October 7, 1943.

$52 per week on December 2, 1943.

He was employed and paid on a weekly wage regardless of the number of hours he worked during any particular week. He was a tailor by occupation and was assigned the duties of shaping and basting coats, and at times also marked the places for buttonholes. The cloth used in the clothes was manufactured from its original shape to its final shape through a series of approximately 12 different operations, the work being passed along from one employee to another as each employee finished its particular work upon the garment. The complainant worked at a bench on the second floor and acted as the foreman of the employees in that part of the building. In addition to the manual work above referred to, he also supervised the passing of the work from one bench to another, had general supervision over the work in that particular part of the building, directed when and for how long certain employees should be laid off from work when the work available was not sufficient to use their services, and exercised his own judgment in giving some orders priority over other orders. Except for the temporary laying off of employees as above referred to he did not have authority to hire or fire employees generally or make such recommendations. His hours of work of same nature as that performed by other employees exceeded 20% of the number of hours worked in the work-week by the employees under his direction.

3. The regular work-week of the Scot Woolen Company consisted of five days of eight hours each, starting at 8 a. m. and ending at 4:30 p. m., which included the lunch period. The power for operating the machines did not go on until 8 a. m. Employees including the plaintiff were supposed to punch the time-clock upon arrival and upon departure, but this requirement was not enforced with respect to the complainant, and in many instances his time of arrival or time of departure was not so recorded. He would often arrive and start work on matters in which the use of the machines was not necessary before 8 a. m., sometimes a half hour more or less, although he was not requested so to do. At other times he would punch in only a few minutes before 8:00 a. m., and on some occasions after 8:00 a. m. He usually checked out within a few minutes after 4:30 p. m., and in some instances before 4:30 p. m. The evidence does not show with any degree of certainty what additional time over forty hours per week the complainant worked during the regular five work days in the week. However, he received each week the regular weekly wage, without deductions for any time absent. The complainant, along with a few other employees, also worked on most of the Saturday mornings. This work would start at 8:00 a. m. and stop some time between 11:30 a. m. and 12:00 o'clock Noon. On some of the Saturdays, such as fell on holidays and for other reasons, the plant did not operate and the complainant did not work. These occasions occurred ten or twelve times per week. The complainant rarely, if ever, punched the time clock on Saturday.

4. At no time while the complainant was employed by the Scot Woolen Company did he make any claim for overtime

compensation. On several occasions he suggested a raise in his weekly compensation, and as set out above increases were put into effect. On January 19, 1944, after he had left the employ of the Company, he for the first time made claim for unpaid overtime compensation. On July 28, 1944, the Scot Woolen Company paid to the complainant by check the sum of $110.92 which was the amount which a labor inspector computed as being owed to the complainant as unpaid wages, following an audit of the Company's records by this inspector. The Company objected to this finding, but on account of the small amount involved paid it to the plaintiff in order to dispose of the controversy.

### Conclusions of Law

1. Sections 6 and 7 of the Fair Labor Standards Act, Sections 206 and 207, 29 U.S.C.A., provide minimum wages and maximum hours for employees who are engaged in commerce or in the production of goods for commerce. In such instances and at the times referred to in the complaint, where an employee was employed for a work-week longer than 40 hours he was entitled to compensation at a rate of not less than one and one-half times the regular rate at which he was employed. However, these provisions do not apply to any employee "employed in a bona fide executive, administrative, professional, or local retailing capacity, or in the capacity of outside salesman (as such terms are defined and delimited by regulations of the Administrator.)" Section 13, Fair Labor Standards Act, Section 213, 29 U.S.C.A. The Administrator has issued regulations defining these terms. An executive employee is therein defined as one whose primary duty consists of the management of the establishment in which he is employed, or of a customarily recognized department thereof, who regularly directs the work of other employees therein, who has the authority to hire or fire other employees, or whose recommendations as to firing or hiring or as to promotion or any other change of status of other employees will be given particular weight, who customarily exercises discretionary powers, whose compensation is on a salary basis of not less than $30 per week, and whose hours of work of the same nature as that performed by non-exempt employees do not exceed 20% of the number of hours worked in the work-week by the non-

exempt employees under his direction. See Shain v. Armour & Co., D.C.W.D.Ky., 50 F.Supp. 907, 912. All of these conditions must exist in order for the employee to be exempt from the provisions of the Act. They do not exist in the present case. Although the complainant was a foreman in the department in which he worked, yet he was a working foreman whose manual work exceeded 20% of the number of hours worked in the work-week by the non-exempt employees under his direction. His title and character of the supervisory duties is therefore immaterial. He likewise lacked the authority to hire or fire other employees, which is another necessary element. The complainant was not an employee employed in a bona fide executive capacity within the provisions of the Act and the regulations thereunder. Joseph v. Ray, 10 Cir., 139 F.2d 409; George Lawley & Son Corp. v. South, 1 Cir., 140 F.2d 439, 151 A.L.R. 1081; Fanelli v. United States Gypsum Co., 2 Cir., 141 F.2d 216; Cohn v. Decca Distributing Corp., D.C.E.D. Pa., 50 F.Supp. 270.

2. The complainant has the burden of establishing by competent evidence the existence and extent of overtime employment. Where the evidence is uncertain and conjectural as to the amount of overtime employment there is not sufficient substance upon which a finding can be predicated. Jax Beer Co. v. Redfern, 5 Cir., 124 F.2d 172. But this does not mean that documentary evidence is necessary to establish the plaintiff's claim or that the plaintiff's evidence must establish his claim in full. Even though the evidence may be uncertain as to the exact amount of overtime employment, yet it may show very conclusively that a certain minimum amount of overtime employment actually existed. Testimony from the memory of the employee himself is competent to establish such a minimum claim. Joseph v. Ray, 10 Cir., 139 F.2d 409, 412; George Lawley & Son Corp. v. South, 1 Cir., 140 F.2d 439, 441, 442, 151 A.L.R. 1081; Fanelli v. United States Gypsum Co., 2 Cir., 141 F.2d 216, 218; Johnson v. Dierks Lumber & Coal Co., 8 Cir., 130 F.2d 115, 119. In this case the complainant claims two hours overtime employment during the five regular work days of each week, and an additional four hours of overtime employment on Saturday. The evidence is too uncertain and indefinite to support the claim for

the two hours during the five regular work days. During those five days he worked approximately 8 hours a day for a total of 40 hours, sometimes more, sometimes less. No accurate record is available to show whether, over the period of time in question, he exceeded or fell below the prescribed 40 hours for the first five work days. The evidence justifies the finding that the complainant worked 40 hours on the first 5 days in each of the work-weeks in question, but it is insufficient to establish how much, if any, overtime work was given during those days. Although the exact time that the complainant worked on Saturdays is not shown by the evidence, yet it is definitely shown that the complainant worked at least three and one-half hours on the Saturdays that the plant was in operation. It was in operation on all but 10 or 12 Saturdays during each year. Accordingly, the evidence is sufficient to establish the complainant's claim for overtime employment to the extent of three and one-half hours per week for 40 of the 52 weeks of the year.

3. The complainant's right to recover for overtime compensation under the Act is not barred by his failure during his employment to demand such compensation. George Lawley & Son Corp. v. South, 1 Cir., 140 F.2d 439, 442, 151 A.L.R. 1081.

4. Upon the dissolution of a corporation its property vests in the stockholders subject to the payment of corporate liabilities. Stockholders receiving such assets are liable for corporate debts incurred before dissolution to the extent of assets so received. Shadoin v. Sellers, 223 Ky. 751, 754, 4 S.W.2d 717; Steele v. Stanley, 237 Ky. 517, 519, 35 S.W.2d 867.

5. The complainant is entitled to judgment based upon overtime employment to the extent of three and one-half hours per week for 40 of the 52 weeks in each year at the rate of compensation applicable to the particular week in question. No issue was presented by the pleadings or by the evidence as to whether or not these two defendants received assets from the corporation upon its dissolution equal to the amount of the judgment herein. If the parties do not agree that this is so and if either defendant contends that liability does not exist to that extent because of his failure to receive such assets, oppor-

tunity will be given for hearing evidence on that particular issue. Otherwise complainant's counsel will make the necessary computation and tender judgment in accordance therewith for entry.