## MARCHANT v. SANDS TAYLOR & WOOD CO.

Civil Action No. 6712.

District Court, D. Massachusetts.

Jan. 29, 1948.

784

James F. Cavanagh, of Boston, Mass., for plaintiff.

William J. Nolan, of Boston, Mass., for defendant.

FORD, District Judge.

This is an action by a former employee of the defendant, wholesaler in flour, coffee and tea, under the provisions of Section 16 (b) of the Fair Labor Standards Act of 1938, hereinafter called the Act, 29 U.S. C.A. § 201 et seq., to recover unpaid overtime compensation, liquidated damages, and attorneys' fees.

At the outset I find, and, moreover, the defendant stipulated, that the defendant was engaged regularly in interstate commerce. It had warehouses in Somerville, Massachusetts (where the plaintiff was employed), Worcester, Massachusetts, and Providence, Rhode Island, as well as regular jobbers in New Hampshire. The plaintiff regularly shipped merchandise from the

warehouse at Somerville for delivery to the warehouse in Providence, and to jobbers in other states. The plaintiff was engaged in commerce within the meaning of the Act. His work involved the interstate delivery of defendant's merchandise. Walling v. Jacksonville Paper Co., 317 U.S. 564, 63 S. Ct. 332, 87 L.Ed. 460; A. H. Phillips, Inc. v. Walling, 1 Cir., 144 F.2d 102, 104, (affirmed on other grounds, 324 U.S. 490, 65 S.Ct. 807, 89 L.Ed. 1095, 157 A.L.R. 876); Walling v. Goldblatt Bros. Inc., 7 Cir., 128 F.2d 778, 783.

The plaintiff was employed by the defendant corporation on April 16, 1916, and discharged from its employ on March 15, 1946. He commenced this action on April 18, 1947, and in his complaint claimed overtime compensation from the date the Act went into effect in 1938. However, at the trial, he withdrew any claim for overtime for the period prior to April 18, 1941, in accordance with the Massachusetts six-year statute of limitations. Mass.Gen.Laws, (Ter.Ed.) ch. 260, sec. 2[1]; cf. Momand v. Universal Film Exchange, D.C.Mass., 43 F.Supp. 996. Prior to enactment of the Portal-to-Portal Act, 29 U.S.C.A. § 251, on May 14, 1947, the statute of limitations of the state where the action was commenced was applied by the federal courts in actions under the Fair Labor Standards Act. Republic Pictures Corp. v. Kappler, 8 Cir., 151 F.2d 543, 545, 162 A.L.R. 228, affirmed in a per curiam decision, 327 U.S. 757, 66 S.Ct. 523, 90 L.Ed. 991. The Portal-to-Portal Act provides a new and uniform statute of limitations for all actions under the Fair Labor Standards Act, but this new limitation does not apply to actions commenced prior to May 14, 1947, 29 U.S.C.A. § 255.[2] Therefore it does not affect plaintiff's claim running from April 18, 1941 through March 15, 1946 (when he was discharged).

The remaining issues here are (1) whether the plaintiff was an exempt employee under the provisions of Section 213 of the Act; (2) the number of hours worked per week by the plaintiff during the period April 18, 1941, until March 15, 1946; (3) whether defendant acted in good faith and had reasonable grounds for believing that it had not violated the Act within the meaning of the Portal-to-Portal Act, 29 U.S.C.A. § 260, so as to render the award of liquidated damages discretionary.

## I. Exempt Employee.

Defendant claims that plaintiff was a bona fide executive from April 18, 1941, through August 12, 1945, and an outside salesman from August 13, 1945, until he was discharged, and that plaintiff is therefore an exempt employee under the provisions of Section 213 (a) of the Act as de-

---

[1] "Sec. 2. Limitation of six years.—The following actions shall, except as otherwise provided, be commenced only within six years next after the cause of action accrues:

"First, Actions of contract founded upon contracts or liabilities, express or implied, except actions limited by the preceding section or actions upon judgments or decrees of courts of record of the United States or of this or of any other state of the United States.

"Second, Actions of tort.

"Third, Actions of replevin."

[2] "Sec. 255. Statute of limitations.

"Any action commenced on or after May 14, 1947, to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act or the Bacon-Davis Act—

"(a) if the cause of action accrues on or after May 14, 1947—may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless commenced within two years after the cause of action accrued;

"(b) if the cause of action accrued prior to May 14, 1947—may be commenced within whichever of the following periods is the shorter: (1) two years after the cause of action accrued, or (2) the period prescribed by the applicable State statute of limitations; and, except as provided in paragraph (c), every such action shall be forever barred unless commenced within the shorter of such two periods;

"(c) if the cause of action accrued prior to May 14, 1947, the action shall not be barred by paragraph (b) if it is commenced within one hundred and twenty days after May 14, 1947 unless at the time commenced it is barred by an applicable State statute of limitations."

fined and delimited by Part 541 of the Regulations of the Administrator. 29 U.S. C.A.Appendix.[3] This definition has the force of law. See Walling v. Yeakley, 10 Cir., 140 F.2d 830; Helliwell v. Haberman, 2 Cir., 140 F.2d 833.

 The burden of proving that the plaintiff was an exempt employee is upon the defendant employer. Helliwell v. Haberman, supra, page 834 of 140 F.2d; Hutchinson v. William C. Barry, Inc., ·D.C.Mass., 50 F.Supp. 292. To sustain this burden, it must prove that its employee comes within all the component parts of the regulations, since they are stated in the conjunctive. George Lawley & Son Corp. v. South, 1 Cir., 140 F.2d 439; 444, 151 A.L.R. 1081. As to the period from April 18, 1941 through August 12, 1945, defendant has failed to sustain this burden. During this period, the evidence showed that the plaintiff was the shipper for defendant and had charge of that department; he received more than $30 per week; and his hours of work of the same nature as that performed by nonexempt employees did not exceed 20 per cent of the number of hours worked in the workweek by the nonexempt employees under his direction. Defendant offered evidence to prove that plaintiff customarily and regularly directed the work of other employees within the meaning of the regulations. The attempt to show he was in charge and directed the employees of the warehouse failed. These employees were under the direction of one Lynch. Plaintiff usually had only one clerical assistant and often no such assistant. Defendant offered testimony that plaintiff's recommendations as to the hiring or firing and as to the advancement and promotion of other employees were given particular weight. The plaintiff's evidence was to the contrary. The defendant presented no written evidence to show plaintiff ever recommended the hiring of an employee. No employee of defendant was presented to prove plaintiff had anything at all to do with interviewing prospective employees. On all the evidence I find that plaintiff made no recommendations concerning either the hiring or firing of employees. The decision concerning this condition of the regulations depended practically wholly on the credibility of the witnesses, and those for the defendant who attempted to sustain the burden of proof with respect to it were not convincing, to say the least. There was considerable testimony regarding the regular exercise of discretionary powers of the plaintiff, but I find that his powers and duties were not of an executive nature. He made up loading lists for the trucks, so that products to be delivered would be placed in the trucks in the order most convenient for taking them out. He watched the inventory of flour, so that there would always be on hand a stock of 5, 10, 25, 50 and 100 pound bags. When a customer came to the warehouse for supplies, plaintiff rang a bell and summoned warehousemen to help the customer. These men were under the direction of one Lynch, an employee of the defendant. When freight cars arrived, he summoned warehousemen to unload them. He collected the timecards of other workers and turned them over to the accounting depart-

---

[3] "Sec. 541.1. Executive. The term 'employee employed in a bona fide executive * * * capacity' in section 13 (a) (1) of the act shall mean any employee—

"(A) whose primary duty consists of the management of the establishment in which he is employed or of a customarily recognized department or subdivision thereof, and

"(B) who customarily and regularly directs the work of other employees therein, and

"(C) who has the authority to hire or fire other employees or whose suggestions and recommendations as to the hiring or firing and as to the advancement and promotion or any other change of status of other employees will be given particular weight, and

"(D) who customarily and regularly exercises discretionary powers, and

"(E) who is compensated for his services on a salary basis at not less than $30 per week (exclusive of board, lodging, or other facilities), and

"(F) whose hours of work of the same nature as that performed by nonexempt employees do not exceed 20 percent of the number of hours worked in the workweek by the nonexempt employees under his direction; provided that this subsection (F) shall .not apply in the case of an employee who is in sole charge of an independent establishment or a physically separated branch establishment."

ment. He opened the warehouse in the morning and closed it at night. This is what the defendant relies upon to prove the plaintiff exercised discretionary powers sufficient to constitute plaintiff an executive. I find that these are all routine tasks requiring no exercise of discretionary power such as is contemplated under Sec. 541.1 of the Regulations. Plaintiff testified, and defendant admitted, that plaintiff fired the coal stoker, parked trucks, ground coffee beans, and did other such manual tasks regularly. It is, to my miind, a singular circumstance that an executive should be required daily to stoke the furnace for the warehouse when there were numerous other employees available to perform this and other menial tasks described above. We have not the picture of an executive here. On all the evidence I find that during none of the period in question was plaintiff a bona fide executive within the meaning of the Regulations. The defendant has not sustained its burden of proof concerning requirements (B), (C) and (D) of Sec. 541.1. Therefore, plaintiff is entitled to overtime compensation for hours worked in excess of 40 per week from April 18, 1941, through August 12, 1945.

Plaintiff, by his counsel, stipulated that he was a salesman from August 13, 1945, until his discharge. From the evidence it appears that he was an outside salesman within the provisions of Sec. 541.5 of the Regulations, and I find that he was such a salesman and was an exempt employee during this period. In any event, plaintiff failed to sustain his burden of proving the amount of overtime worked during the period and could not recover even if he were nonexempt.

## II. Hours Worked.

▮▮▮▮ The plaintiff has the burden of proof as to the number of overtime hours worked each week, and must produce enough evidence to permit a definite finding without guess or conjecture that he worked some particular number of hours overtime. He is not required to produce a time card or schedule of the exact hours worked by him for each week. George Lawley & Son Corp. v. South, supra, page 441 of 140 F.2d. Plaintiff testified that Monday through Friday he worked from 7 A.M., when he opened the business, until after all other employees left, their scheduled departure time being 5 P.M. He then checked the lights, doors and windows, and sprinkler system before leaving at 5:30 P.M., or later. This was definite evidence in each workweek of hours worked. Defendant kept no record of plaintiff's hours worked. Defendant's witnesses testified that plaintiff need not have stayed after 5 P.M., but I find that his employer never forbade him to do these things, but, in fact, acquiesced in his performance for several years, so that they were part of his regular duties. Allowing one-half hour for lunch, I find on the evidence that plaintiff worked ten hours per day Monday through Friday.

Plaintiff further testified, and it is uncontroverted, that until 1943 he worked from 7 A.M. till 1:30 P.M. on Saturdays, and I find it to be a fact that he did work 6½ hours each Saturday from April 18, 1941 through December 31, 1942. Thereafter plaintiff worked only ½ hour on Saturdays when he checked the warehouse, fired the stoker and removed clinkers. I also find that for six months each year during cold weather plaintiff went to the warehouse on Sunday to fire the stoker and remove the clinkers and to inspect the warehouse, and, during the rest of the year, only to inspect the warehouse. This work required ½ hour each Sunday.

▮▮▮ Defendant's contention that Section 2 (a) of the Portal-to-Portal Act exempts it from liability is without merit. The activities of the plaintiff embraced in the claimed overtime here were compensable by contract with his employer. They were activities he was required to perform by his contract of employment and there is no reason why, if he is entitled to the benefits of the Fair Labor Standards Act, he should not be paid for them. There is nothing in this section of the Portal-to-Portal Act that relieves the employer here from payment.

Plaintiff's wages were: $48 per week from April 18, 1941, through March 28, 1942; $49 per week from March 29, 1942, through October 3, 1942; $50 per week from October 4, 1942, through August 12, 1945.

 Computation of the rate of pay will be made according to the rule of Overnight Motor Transportation Co. Inc., v. Missel, 316 U.S. 572, 579, 62 S.Ct. 1216, 86 L.Ed. 1682. Where the contract of employment is for a set weekly wage but the hours of work are variable or fluctuating, the rate of pay for the week is the amount of pay divided by the number of hours actually worked. Sawyer v. Selig Mfg. Co., D.C., 74 F.Supp. 319, 322. No overtime compensation will be allowed for two weeks each year when plaintiff was on vacation. Plourde v. Massachusetts Cities Realty Co., D.C., 47 F.Supp. 668, 671. In the absence of evidence of exact vacation dates, the two weeks deducted will be the two most remunerative consecutive weeks during each of the years 1941 through 1945. Four days absence per year on account of illness was admitted by the plaintiff, and will be deducted from time worked during each of the years 1941 through 1945. Keen v. Mid-Continent Petroleum Corp., D.C., 63 F.Supp. 120, 139. There being no exact dates of illness, four consecutive days of weeks when plaintiff's number of hours worked was the greatest will be eliminated from consideration for the purpose of calculating overtime, e. g., the four days may be taken to be Monday through Thursday of the most remunerative week of the year.

### III. Liquidated Damages.

 The defendant contends it has shown to the satisfaction of the court that it acted in good faith and it had reasonable grounds for believing that its failure to pay overtime was not a violation of the Fair Labor Standards Act of 1938 and an award of liquidated damages lies in the court's discretion. This court does not agree. The only evidence to support the contention of the defendant came from its vice-president who testified he conferred with someone employed by the Wage and Hour Division of the Labor Department and as a result of this conference that included all the employees of the defendant, he classified the plaintiff as an executive. The vice-president of the defendant company did not show who the person was he talked with at the Wage and Hour Division or that this individual was a person in authority. For all this court knows he might have talked with a stenographer. This court cannot say that this nebulous inquiry furnished reasonable grounds for not paying overtime to the plaintiff, especially since it seems clear and should have been clear to the defendant on the circumstances of the plaintiff's employment that the plaintiff was not an executive. The defendant in this case would have to show a great deal more than it did to convince this court there was room for the exercise of its discretion with respect to liquidated damages. All that can be said for the defendant here in the light of the evidence is that it took a chance it was right in its classification and found itself in error. Reliance on the unwarranted decision of an unidentified employee of the Labor Department, not shown to have authority in making the classification of the plaintiff, is no basis upon which to make a finding of reasonable grounds for the defendant's belief that its act was not a violation of the Fair Labor Standards Act.

When computations are made by the parties in accordance with this opinion and submitted to the court, judgment will be entered for the plaintiff for the unpaid overtime compensation, liquidated damages in an amount equal to the overtime compensation, together with an allowance for attorneys' fees and costs.