### FREEMAN v. BLAKE CO.

Civ. No. 7720.

United States District Court
D. Massachusetts.

June 7, 1949.

Thomas P. Flaherty, Dorchester, Mass., for plaintiff.

Samuel H. Cohen, Boston, Mass., for defendant.

WYZANSKI, District Judge.

1. This is a suit under the Fair Labor Standards Act, 29 U.S.C.A. c. 8 by an employee seeking recovery of wages, liquidated damages and an attorney's fee. Plaintiff filed the complaint July 14, 1948. The only serious issue is factual: how many hours did plaintiff work from July 14, 1946 through December 24, 1947.

2. Many facts have been stipulated. Defendant is a Massachusetts corporation making women's girdles. Plaintiff's employment is in commerce covered by the Act. She does not fall within any of the exemptions. Despite a broader contention originally made in her complaint, she now seeks recovery for underpayments only for the period beginning July 14, 1946—that is, for the period beginning with the work week ending July 20, 1946. She recognizes that she can reach back only as far as that because she commenced her action on July 14, 1948 and there is a two year statute of limitations. § 6(b) of the Portal-to-Portal Act, 61 Stat. 87, 29 U.S.C.A. § 255(b). See Marchant v. Sands Taylor & Wood Co., D.C.Mass., 75 F.Supp. 783, 785.

3. Plaintiff was paid on the basis of a 40-hour work week at the following rates: from the week ending July 20, 1946 to the week ending September 28, 1946 at the rate of $45 a week; from the week ending October 5, 1946 to the week ending October 31, 1947 at the rate of $55 a week; from the week ending November 8, 1947 to the week ending December 27, 1947 at the rate of $60 a week.

4. During the above periods of time there were at least 28 weeks during which on account of holidays, vacations, sickness or other causes plaintiff actually worked less than 40 hours. Nonetheless, in those weeks she was paid the full rate above stated. During the above periods of time there were 4 separate weeks during which she currently reported in writing to defendant that she had worked more than 40 hours in that week. On receiving that written report and the calculation based thereon, defendant on the appropriate ensuing pay day paid plaintiff the amount so calculated. No claim is founded on any of those weeks. Due to these eliminations the claim covers

6 weeks when plaintiff was paid $45 a week, 35 weeks when plaintiff was paid $55 a week and 3 weeks when plaintiff was paid $60 a week.

5. To appreciate the claim it is proper to note at the outset that plaintiff is an astute, competent and knowledgeable woman of middle age. She once was co-manager of an enterprise for the manufacture of children's garments, and before working for defendant she had had about twenty years' experience as a stitcher and about eight years' experience as a forelady.

6. January 11, 1946 she went to work for defendant as a stitcher on a flatlock machine. A month later she was promoted to forelady in charge of the stitchers in the stitching room. Her starting rate was $45 a week. Her duties were to work with and to supervise about 15 to 17 girls during their working hours. During most of the time covered by the complaint these hours were from 8:00 a. m. to 12:00 noon and from 12:45 p. m. to 4:45 p. m. during the five days from Monday through Friday. There was a short span beginning in September 1946 and lasting for only a few weeks when the whole schedule was moved forward fifteen minutes.

7. Plaintiff herself did stitching and other work of the type her subordinates did. Rarely—not more than twenty times according to her own testimony—she also operated what is known as a flatlock machine. But the chief difference between her and her subordinates was that plaintiff had the continuing responsibility of sorting out their work, preparing for their signature and her signature records of hours they and she worked and reporting on their capacity and performance either to the president of the Company, Joseph M. Blake, or Miss Frances M. Farley, his confidential assistant and secretary and plaintiff's immediate superior.

8. No one reviewed the written records made by plaintiff as to the hours she worked except for the purpose of making mathematical computations and figuring amounts to be withheld for old age and income taxes.

9. The enterprise was a small one, operating only one shift and turning out at peak one hundred twenty-five dozen women's girdles per week. The schedule of manufacturing operations was prepared in Miss Farley's office and under her direction. She transmitted a regular schedule to plaintiff every day, and that schedule showed ordinary orders and rush orders. She also transmitted to plaintiff, if not every day, almost every day supplementary schedules of so-called rush orders. On receiving either type of schedule plaintiff took it into account in laying out work and selecting from the place where they were kept the necessary materials and placing them in bundles at the work bench of the operatives. There was virtually no time at which any operative was without a plan of work and proper materials for executing the plan.

10. It is undisputed that plaintiff started her morning at the same time as the workers under her direction, that is, at 8:00 a. m. except for the short span when she and they began at 8:15 a. m. She could not see either Mr. Blake or Miss Farley at the very start of the manufacturing day as they customarily arrived at 9:00 a. m. or later. They did stay, however, until 6:00 p. m. or later.

11. Plaintiff's story is that every week day in the 44 weeks in dispute she stayed after the operatives had left. She says she received on each of those 220 days after regular working hours rush orders from Miss Farley's office and selected and bundled the materials necessary for their execution promptly the next day. Usually she conferred with Mr. Blake and Miss Farley about the performance of the operatives and their production. In addition, on 4 individual days she worked the flatlock machine. It is her testimony that in each of the disputed weeks she worked eight hours overtime and that the reason that she did not record it is that once Miss Farley and twice Mr. Blake told her not to do so as it would create too much clerical confusion.

12. Plaintiff has no written records of her own and the records she prepared and signed for the company show that in the disputed 44 weeks she worked 40 hours a week.

13. However, to support her story plaintiff offered three witnesses. The first was Esten, who was a friend of plaintiff, who had worked with her as a co-manager of another enterprise and who had secured through plaintiff the employment he still holds with defendant. He testified that he left the factory at 6:00 p. m. every night and that at that hour plaintiff was usually just finishing so that they rode home together in his car, for which she paid the parking fee. Esten said plaintiff never finished before 6:00 p. m. Sometimes she finished later and on those nights he did not stay to give her a ride home.

14. John Daugherty, a clothes cutter, testified that while he was employed by the company he generally stayed until 5:00 p. m. or 5:30 p. m. and when he left he usually saw plaintiff working.

15. Miss Jean Robinson, who was formerly secretary to Mr. Blake, recalled that on some occasions Miss Farley directed plaintiff to alter the records which plaintiff had handed in of the hours plaintiff had worked. Miss Robinson's evidence, which at first seemed so significant, however, loses its force when Exhibits C through G and 1 are carefully examined. The only records which appear to have been altered were those for the first weeks after the manufacturing operatives changed their starting time from 8:15 a. m. back to 8:00 a. m. By inadvertence plaintiff continued to record the closing time as 5:00 p. m. instead of 4:45 p. m. When this error, due purely to inattention, was called to her attention by those who were making mathematical computations, plaintiff made the necessary corrections to substitute 4:45 p. m. for 5:00 p. m. on the records.

16. In its defense the corporation offered the testimony of Joseph M. Blake and Miss Frances M. Farley. Both denied that they ever asked plaintiff to omit for clerical or other reasons a correct report of the overtime she worked. Both stated that except for those 4 weeks in which overtime was paid they had never seen plaintiff work after regular hours, they had never given her rush orders after regular hours and they had never received after regular hours reports from plaintiff of work production or employee performance.

17. I cannot find that any witness has given an accurate and complete account of what he observed. And I decline to base my findings upon acceptance of any one person's story in full. But bearing in mind the doctrines of burden of proof laid down in Anderson v. Mt. Clemens Pottery Co., 328 U.S. 680, 687, 66 S.Ct. 1187, 90 L.Ed. 1515. I reach the conclusions stated in the following paragraphs by piecing together such parts of the witnesses' stories as I believe and making appropriate inferences therefrom.

18. I find that plaintiff on some days did work after the operatives under her direction went home. It would have been normal for her sometimes to stay after the regular hours to do part of the sorting in connection with rush orders or to talk with her superiors who came in later and stayed later than plaintiff or the operatives under her direction.

19. It is perplexing to determine how regularly and how much later than the operatives she stayed and for precisely what purposes. I believe that some times she remained just to get a ride home with Esten. I do not believe his story that every time he gave plaintiff a ride home she had been working up to the moment they drove off from the factory. It seems to me clear that there was nothing that legitimately could have occupied her for an hour and a quarter every night in the work week, Layouts for rush orders for 15 to 17 operatives could not take more than a small fraction of that time, and reports about those 15 to 17 operatives made to Mr. Blake and Miss Farley, unless they were interlarded with generous supplies of gossip, must have taken an even smaller fraction of that time.

20. From the facts found in the two preceding paragraphs, I find as an ultimate fact that plaintiff worked one hour beyond the regular forty hours in each of the 44 contested weeks.

21. In making the last finding I have not taken into account the fact that, as has been stipulated, there were 28 weeks not now in dispute in which defendant paid

plaintiff a full week's pay for 40 hours' work even though she took a holiday during the week or was sick. The Fair Labor Standards Act does not authorize a court to recognize such set-offs. Hutchinson v. William C. Barry, D.C.Mass., 50 F.Supp. 292, 296. And if an employee chooses to insist on his or her rights and to disregard his or her employer's generosity, the only forum in which the employer can seek vindication is the tribunal of public opinion.

22. Nor have I in connection with my ultimate finding taken into account that plaintiff without supervision made out her own reports of her time worked and did not inform defendant, to say the least, of the extent to which she claimed she was under-reporting her hours worked. This false re-porting by the employee, this silence by her and this reliance by the employer on that reporting and silence apparently do not con-stitute what a majority of the court above me regards as an estoppel. George Lawley & Son Corporation v. South, 1 Cir., 140 F. 2d 439, 443, 151 A.L.R. 1081. I must accept their view of the law. I refrain from com-menting on the business morality of an employee who, having kept secret her claim that she is working so many overtime hours each week, twice takes a weekly wage in-crease, with the knowledge—not shared by her employer—that the effect of the in-crease is to give even greater monetary value to future increments of the secret claim she is building up.

23. On the basis of my ultimate finding plaintiff is entitled for each of the 6 weeks during which her basic salary was $45 to the following amount: $45/40 x 1½ (in accordance with the overtime provisions of § 7 of the Fair Labor Standards Act) x 2 (in accordance with § 16 of the same Act). This totals $3.375 per week or $20.-25 for 6 weeks. For each of the 35 weeks during which her basic salary was $55 plaintiff is entitled to the following amount: $55/40 x 1½ x 2. This totals $4.125 per week or $144.38 for 35 weeks. For each of the 3 weeks during which her basic sal-ary was $60 plaintiff is entitled to the fol-lowing amount: $60/40 x 1½ x 2. This totals $4.50 per week or $13.50 for 3 weeks. The grand total is $178.13.

24. One half this sum, $89.07, rep-resents "wages" within the meaning of §§ 1426(a), 1400 and 1401 [Social Security Old Age Tax] and §§ 1621(a), 1622, 11 and 12 [Income Tax] of the Federal Internal Rev-enue Code, 26 U.S.C.A. §§ 1426(a), 1400, 1401, 1621(a), 1622, 11, 12. Defendant should make withholdings in accordance with these acts. Cf. Keen v. Mid-Continent Petroleum Corp., D.C. Iowa 1945, 63 F. Supp. 120, 142.

25. I direct that defendant if it desires to secure credit for these withholdings should, prior to June 14, 1949, file with the Clerk of this Court an affidavit (1) showing that it has made the appropriate withhold-ings and paid them to the appropriate Col-lector of Internal Revenue, and (2) carry-ing as an attached exhibit the Collector's receipt.

26. As counsel fees I can, in view of the size of the recovery, allow only $25. But this is not to be regarded as a measure of the ability and diligence which, as I said from the bench, counsel displayed in this case.

Judgment for plaintiff to enter June 15, 1949 in accordance with opinion.